IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD STANTON WHITMAN, | ) | Case No. 5:19-cv-1818 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DAVID W. GRAY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

On November 28, 2016, Richard Stanton Whitman – while sitting on his bed in a house he shared with his sister – shot and killed David Eadie.  Stanton claimed self-defense. A Stark County, Ohio, jury disagreed and found him guilty of murder with a firearm specification and having weapons while under disability.  And Whitman was sentenced to 21 years to life imprisonment.  Whitman, *pro se*, now seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming his convictions in *State v. Whitman,* Stark Cty. Ct. of Common Pleas Case No. 2016CR2255, violated his federal constitutional rights.[1]  ECF Doc. 1.

Because all of Whitman's claims are non-cognizable, procedurally defaulted, and/or meritless, I recommend that all of Whitman's claims be DISMISSED and that his petition for

---

[1] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report & recommendation pursuant to Local Rule 72.1.

Respondent Warden Gray filed a return of writ on December 13, 2019.  ECF Doc. 8.  And Whitman filed a traverse on March 23, 2020.  ECF Doc. 25.

writ of habeas corpus be DENIED.  I further recommend that Whitman not be granted a certificate of appealability.

## I.     State Court Procedural History

### A.     Trial Court

On January 23, 2017, Whitman was indicted by a Stark County, Ohio, grand jury with one count of murder with a firearm specification and one count of having weapons while under disability.  ECF Doc. 8-1 at 6-7.  The indictment specifically alleged that Whitman had a firearm while being – among other things – a chronic alcoholic and that he shot and killed Eadie.  Id.  Whitman pleaded not guilty.  ECF Doc. 8-1 at 11-12.

Whitman filed four pretrial motions in limine, one of which is relevant in this case: an April 13, 2017 motion to exclude evidence of his prior arrests and convictions and of an heated dispute between him and Eadie that happened at the Kalahari Resort.  ECF Doc. 8-1 at 13-27.  The state, in turn, moved in limine to exclude evidence of Eadie's alleged prior bad acts.[2]  ECF Doc. 8-1 at 28.    The trial court indicated both prior bad acts motions would be granted or both denied.  The parties agreed they should be denied..  ECF Doc. 8-2 at 5-6, 10.

Whitman also moved for a self-defense jury instruction, including an instruction under Ohio Rev. Code § 2901.09 that one does not have a duty to retreat in his home (also known as the "Castle Doctrine").  ECF Doc. 8-1 at 35-36; State v. Lewis, 976 N.E.2d 258, 261 (Ohio Ct. App. 2012).  The trial court held these motions in abeyance until after hearing opening statements and some of the evidence.  ECF Doc. 8-2 at 8.  The trial court issued its ruling after the close of the state's case and just before Whitman called his second – and last – witness.  ECF Doc. 8-3 at 123-27.  The court granted in part Whitman's motion for a self-defense jury

---

[2]   Specifically, an October 2016 incident in which police – responding to a 911 call – discovered that Eadie had fired holes into the floor of his living room while intoxicated.

instruction, declining to instruct the jury on the Castle Doctrine.  ECF Doc. 8-3 at 125-27, 133-34.  The trial court reasoned that Castle Doctrine instructions were inapplicable because Whitman was only a temporary resident at his sister's, Janeann Whitman ("Janeann"), residence.  ECF Doc. 8-3 at 126-27, 129-30, 182.

The jury convicted Whitman on both counts and on the firearm specification.  ECF Doc. 8-1 at 37-42.  On May 4, 2017, the trial court sentenced Whitman to serve an aggregate 21-year to life sentence, consisting of: (1) a 15-year to life prison term on the murder conviction; (2) a mandatory consecutive 3-year prison term on the firearm specification; and (3) a consecutive 36-month prison term for the having weapons while under disability.  ECF Doc. 8-1 at 43-44.

B.      Direct Appeal

On May 17, 2017, Whitman appealed his convictions to the Ohio Court of Appeals. ECF Doc. 8-1 at 49.  Through new counsel, Whitman filed a merits brief, asserting four assignments of error:

1. The trial court erred by overruling appellant's request for a "no duty to retreat/defense or residence or vehicle" jury instruction.

2. The trial court erred by overruling appellant's objections to testimony regarding appellant's prior acts.

3. Appellant's murder conviction was against the manifest weight of the evidence.

4. The trial court erred by not stating on the record, or in its sentencing entry, its grounds for imposing consecutive prison sentences, as required by R.C. 2929.14(C)(4).

ECF Doc. 8-1 at 51.  First, Whitman argued that the trial court's failure to give Castle Doctrine instructions made the jury instructions incomplete because there was sufficient evidence to show that he lived in Janeann's home, and the instructions would have changed

3

the jury's verdict.  ECF Doc. 8-1 at 65-66.  And second, Whitman argued that evidence of the "Kalahari incident" was more prejudicial than probative – and therefore inadmissible – because it served only to illustrate that Whitman previously had acted aggressively towards Eadie.  ECF Doc. 8-1 at 67-68.  Whitman also contended that the court's ruling lacked sound reasoning when it simply created a "quid pro quo" to allow both parties to bring in evidence to which the other objected.  ECF Doc. 8-1 at 68.

The state filed an appellee brief, conceding that Whitman resided at Janeann's residence and that Castle Doctrine instructions would have been appropriate, but arguing that Whitman had not been prejudiced by the lack of instructions.  ECF Doc. 8-1 at 106, 119-26. On July 23, 2018, the Ohio Court of Appeals sustained Whitman's fourth assignment of error, thus affirming, in part, and reversing, in part, the judgment of the trial court and remanding for the limited purpose of resentencing.  ECF Doc. 8-1 at 140-71.

In denying relief on Whitman's first assignment of error, the Ohio Court of Appeals stated that because failure to properly instruct was not in most instances a structural error, "the harmless-error rule of *Chapman v. California*, 386 U.S. 18 . . . (1967) applies; failure to properly instruct the jury does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."  ECF Doc. 8-1 at 151-52.  The court found that that although Castle Doctrine instructions would have been appropriate, the trial court's failure did not affect Whitman's substantial rights, contribute to his conviction, or result in structural error.  ECF Doc. 8-1 at 158 (citing *Chapman*).  The court reasoned:

> {¶64}  [T]he relative statuses of Eadie and [Whitman] in the home, and [Whitman's] duty to retreat or lack thereof, were not debated questions of fact at trial.  The issues were whether [Whitman] was at fault in creating the affray and whether he reasonably believed shooting Eadie was his only choice to avoid great bodily harm or death.  Despite [Whitman's] self-serving trial testimony, the evidence established [Whitman] resolved to shoot Eadie as Eadie

was on his way back up the stairs, and he laughed about doing so as his sister was still on the phone with 911.  [Whitman] did not tell police in the immediate aftermath of the shooting that he feared Eadie was going to throw him out a window.  Instead, he admittedly was thinking at the time, "God, don't make me shoot this asshole;" he had been "pushed" enough and didn't need to see whether Eadie had a weapon or not.

{¶65}  The jury simply rejected [Whitman's] theory of self-defense. . . . Had the jury been instructed upon the Castle Doctrine, it would have had no effect on the inescapable conclusion drawn from the evidence: [Whitman] did not act in self-defense and did not present evidence which, if believed by a properly-instructed jury, would have supported an acquittal. . . . The error in omitting the Castle Doctrine instruction was therefore harmless.

[. . .]

{¶68} . . . The evidence established that [Whitman] was at fault in creating the situation that led to the shooting and he was not in danger of death or great bodily harm from Eadie.

{¶69}  We therefore conclude that even if the trial court erred by not giving the jury Castle Doctrine instruction[s], we cannot say, and [Whitman] has not demonstrated, that any such error was prejudicial. . . . There is nothing in the record to suggest that the jury instruction probably misled the jury in a matter materially affecting [Whitman's] substantial rights . . . or otherwise resulted in a manifest miscarriage of justice.

ECF Doc. 8-1 at 159-61 (alterations, citations, and quotation marks omitted).

In denying Whitman's second assignment of error, the Ohio Court of Appeals concluded that, in light of the limited nature of the "Kalahari incident" and the "overwhelming evidence otherwise adduced at trial," the trial court did not abuse its discretion in admitting evidence of the "Kalahari incident" and Whitman did not suffer any material prejudice as a result.  ECF Doc. 8-1 at 162-63.

On July 23, 2018, Whitman filed a *pro se* appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 172.  His memorandum in support of jurisdiction asserted two propositions of law:

1.  Whether the trial court's removal of the Castle Doctrine from appellant's jury instructions affected appellant's substantial rights or contributed to his conviction?

5

> 2.  Whether one still has a duty to retreat when he retreats to his own bedroom and has shown that he has retreated or withdrawn from the situation?

ECF Doc. 8-1 at 175.  Whitman contended that the denial of Castle Doctrine instructions deprived him of a fair trial and violated his right to due process.  ECF Doc. 8-1 at 176.  He argued that (i) his case was distinguishable from the state court case relied on by the Ohio Court of Appeals, (ii) the court's decision was contrary to Ohio Supreme Court precedent, and (iii) the lack of instructions deprived him of a meaningful opportunity to present a complete defense.  ECF Doc. 8-1 at 178-81, 183.  Whitman argued that the Ohio Court of Appeals failed to put itself in his position because there was an arguable issue as to whether he was at fault in creating the affray and reasonably believed that he was in imminent danger and that deadly force was necessary.  ECF Doc. 8-1 at 180-83, 185.  The state filed a memorandum in response.  ECF Doc. 8-1 at 219.  On November 7, 2018, the Ohio Supreme Court declined to exercise jurisdiction.  ECF Doc. 8-1 at 234.

**C.**      **First Petition for Post-Conviction Relief**

On July 24, 2018, Whitman filed a *pro se* motion for post-conviction relief and requested an evidentiary hearing.  ECF Doc. 8-1 at 235-36.  Whitman raised three claims of ineffective assistance of trial counsel:

> 1.  Trial counsel failed to properly investigate, prepare witnesses, and present evidence of police misconduct, specifically moving the body of Mr. Eadie. ECF Doc. 8-1 at 239.

> 2.  Trial counsel failed to investigate, prepare or present evidence in reference to Nicholas Eadie.  ECF Doc. 8-1 at 243.

> 3.  Trial counsel failed to bring forth exculpatory evidence in regards to the phone records and text messages.  ECF Doc. 8-1 at 244.

In support of his first claim, Whitman asserted that photos of the crime scene showed that Eadie's body had been moved to the edge of the stairs, altering the crime scene, and precluding him from presenting a complete defense. ECF Doc. 8-1 at 241. He argued that counsel failed to investigate and obtain an expert in crime-scene reconstruction to refute the state's theory that Eadie was not entering the bedroom and was over six feet away from Whitman at the time of the shooting. ECF Doc. 8-1 at 242.

In support of his second claim, Whitman asserted that trial counsel had in their possession Eadie's son's – Nicholas Eadie ("Nicholas") – interview, which would have supported his self-defense claim but failed to present the interview or call Nicholas as a witness at trial. ECF Doc. 8-1 at 243-44. Nicholas's interview would have shown that Eadie had behaved aggressively towards Whitman since they first met, and therefore, Whitman had good reason to fear Eadie. ECF Doc. 8-1 at 243. In support of his third claim, Whitman asserted that phone and text records would have shown that Janeann's repeated calls to Whitman and Eadie agitated the "entire situation leading to . . . Eadie's death." ECF Doc. 8-1 at 244-45. The records also would have refuted Janeann's testimony that Eadie was called to come over after the gun-pointing incident. ECF Doc. 8-1 at 245. A reasonable jury, he argued, could have concluded from the records that Janeann was trying to incite violence and instigated Eadie's death. Id. Whitman also asserted that counsel failed to object to the state returning Janeann's phone before Whitman could have had his own expert to investigate it. Id.

In a supporting affidavit, Whitman stated, as to his first claim: (1) Whitman learned from discovery received by counsel that Eadie's body had been moved before the crime lab took photos of the crime scene and a 3D scan of the room, which he made counsel aware of

and told them to view the body camera footage; (2) counsel told Whitman that they had viewed the footage but the footage did not depict Eadie's body being moved; (3) when the body camera footage was published at trial, it clearly depicted Eadie's body being moved; (4) Whitman told counsel, but counsel ignored Whitman. ECF Doc. 8-1 at 248-49.

As to his second claim, Whitman stated: (1) he made counsel aware that Nicholas would be an important witness because Nicholas would be able to provide insight as to (a) why Eadie had such a hostile attitude towards Whitman since they first met, (b) Eadie's demeanor, and (c) what Eadie had told Nicholas about why he was going to confront Whitman; (2) counsel told Whitman that Nicholas had not been interviewed and refused to be interviewed; (3) discovery showed that Nicholas had in fact been interviewed and was under subpoena to be interviewed; and (4) counsel told Whitman they would provide him the interview after it was conducted. ECF Doc. 8-1 at 249.

As to his third claim, Whitman stated: (1) he told counsel that they should investigate the phone and text records between Janeann and Eadie because they had been arguing in the weeks leading up to the offense, which played a "substantial" part in Eadie's decision to come over to Janeann's house and attack him; (2) counsel told Whitman that they had nothing to give him because the state's expert failed to download any data from Janeann's phone; (3) discovery showed three court orders for phone, text, and GPS records; (4) when Whitman confronted counsel, they told him that the information referenced in discovery was on a disk that showed up blank when they tried to print it out; (5) counsel told Whitman that they requested another copy of the data and received a thumb drive, but the thumb drive was blank; and (6) Whitman was still unable to retrieve the information . ECF Doc. 8-1 at 248-50.

Whitman attached to his motion a police report by Officer Scott Jones, stating that Nicholas arrived at the scene of the crime after Eadie's death.  ECF Doc. 8-1 at 258.  Nicholas told the officer that: (1) Janeann and Eadie had been arguing on-and-off for the past several weeks; (2) things had been bad between them recently; (3) Eadie had never gotten along with Whitman and there always had been "bad blood" between them; and (4) weeks before the offense, police responded to Janeann's house and took several firearms away from Eadie because Eadie was drunk and firing rounds into the floor.  *Id.*  Officer Jones stated, "It appeared [Nicholas] was not surprised by the fact that [Whitman] had killed [Eadie]."  *Id.*

Whitman also attached the state's February 2, 2017 response to discovery, which included a list of items received by counsel.  ECF Doc. 8-1 at 259-61.  This included: (1) crime scene photos; (2) Nicholas's interview; (3) phone records; and (4) incident reports from the same police department as Officer Jones.  ECF Doc. 8-1 at 261.  Last, Whitman attached photos and trial court orders ordering T-Mobile to produce phone records, text messages, and GPS locations of a certain phone number.  ECF Doc. 8-1 at 251-56, 262-64, 266-67.

The state filed a response.  ECF Doc. 8-1 at 268.  The trial court dismissed Whitman's post-conviction motion in a judgment entry dated August 21, 2018, determining that Whitman's "self-serving statements" failed to establish that counsel was ineffective; it appeared Whitman was seeking a "second bite at the apple;" and counsel was not deficient. ECF Doc. 8-1 at 280-81.

On September 6, 2018, Whitman filed a *pro se* appeal in the Ohio Court of Appeals (ECF Doc. 8-1 at 282) asserting three assignments of error:

> 1.  A trial court abuses its discretion when it fails to properly consider a petition for post-conviction relief.  ECF Doc. 8-1 at 289.

9

2.  Defendant's Sixth Amendment rights were violated due to ineffective assistance of counsel. *Trial counsel failed to investigate and present evidence of police misconduct specifically moving the body of Mr. David Eadie.* ECF Doc. 8-1 at 290.

3.  Defendant's Sixth Amendment rights were violated due to ineffective assistance of counsel. *Trial counsel failed to investigate, prepare and present evidence in reference to Nicholas Eadie.* ECF Doc. 8-1 at 292.

4.  Defendant's Sixth Amendment rights were violated due to ineffective assistance of counsel. *Trial counsel failed to bring forth exculpatory evidence in regards to the phone records and text messages.* ECF Doc. 8-1 at 294.

Whitman's arguments in support of his second, third, and fourth assignments of error largely mirrored those that he made in support of claims one, two, and three in his state post-conviction petition. ECF Doc. 8-1 at 290-95. This included his assertion that counsel had possession of Nicholas's interview. ECF Doc. 8-1 at 293.

The state filed an appellee brief. ECF Doc. 8-1 at 321. Whitman filed a reply, adding that Nicholas's statements would have shown that Eadie's emotional instability was the primary cause for the events in the months before the shooting, leading Whitman to believe that Eadie had "snapped" and made Eadie easier to agitate and manipulate. ECF Doc. 8-1 at 342. Whitman also asserted that the text messages introduced at trial were not those between Janeann and Eadie, and the state failed to respond to counsel's motion for discovery of those records. ECF Doc. 8-1 at 343-44. The records, Whitman argued, would have shown an ongoing conflict between Janeann and Eadie, Janeann had called Eadie before the gun pointing incident, and Eadie was waiting for Janeann's housemate to leave before entering and assaulting Whitman. ECF Doc. 8-1 at 343-44.

10

On February 4, 2019, the Ohio Court of Appeals affirmed the trial court's judgment.

ECF Doc. 8-1 at 346.  In overruling Whitman's second, third, and fourth assignments of error, the court stated:

> Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance.  ( . . . *Strickland v. Washington* [1984], 466 U.S. 688 . . . )

> To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of trial would have been different.

ECF Doc. 8-1 at 350-51 (citations omitted) (quoting *State v. Bradley*, 538 N.E.2d 373, 375 (Ohio 1989)).  The court also stated that Whitman had not elaborated on how the lack of a defense expert, Nicholas's testimony, or phone evidence had prejudiced him.  ECF Doc. 8-1 at 351-53.  The court reasoned:

> {¶ 20}  In his affidavit attached to his petition, [Whitman] averred his trial counsel did not pursue the issue of the moved body at trial.  The officers on the scene were wearing body cams.  The body cam videos were played for the jury.  According to [Whitman's] affidavit, the videos showed the officers moving the body.  The jury was able to see for themselves that the officers had moved the body and during deliberations, could have considered whether the moving of the body had any bearing on the case.  Furthermore, [Whitman] testified in his own defense and did not raise the issue of the body's placement.

> […]

> {¶ 23}  In his affidavit, [Whitman] averred his trial counsel did not pursue the statements made by Nicholas.  [Whitman] stated Nicholas would have been able to "provide insight into why his father had such a hostile attitude toward me from our first meeting as well as what he knew about his father's demeanor and what his father had told him about why he was going to confront me."  It is very possible that Nicholas's statements could have been more inculpatory than exculpatory.  This court must accord deference to counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." . . . Furthermore, [Whitman] testified and raised the issue of the "bad blood" between him and [Eadie].  He was able to advance his self-defense

11

claim by testifying that the victim was the aggressor and he was fearful of [Eadie].

[…]

{¶ 26}  In his affidavit, [Whitman] averred [Janeann's] agitation of [Eadie] was the proximate cause of [Eadie] coming over and attacking him violently and the phone records would have proven that.  However, [Whitman] did not indicate the relevance of this argument.  [Janeann] testified for the defense.  She explained how she contacted [Eadie] several times during the day and asked him to come over to help her with [Whitman] because [Whitman] was drunk and causing problems and she was concerned that he was going to commit suicide.  On direct she testified how after [Eadie] arrived, he pinned [Whitman] against the bedroom wall and was screaming at him and head-butting him.  At one point [Eadie] was on top of [Whitman] and had his hand around [Whitman's] throat.  The two then separated for several minutes with [Whitman] upstairs and [Eadie] downstairs.  When [Eadie] went back upstairs, she did not hear any arguing or words before [Whitman] shot [Eadie].  This testimony helped to advance [Whitman's] claim of self-defense and [Whitman's] fear of [Eadie].

{¶ 27}  We note each of appellant's arguments on ineffective assistance of counsel could have been raised on direct appeal and are therefore barred under the doctrine of res judicata.

ECF Doc. 8-1 at 352-54.

On March 4, 2019, Whitman filed a *pro se* appeal with the Ohio Supreme Court.  ECF Doc. 8-1 at 357.  Whitman's memorandum in support of jurisdiction asserted two propositions of law:

1. A defendant's Sixth Amendment rights to effective counsel were violated when trial counsel failed to investigate police misconduct, phone records, text messages and the testimony of Nicholas Eadie.

2. In adopting the doctrine of res judicata, it was not the legislative intent for the doctrine of res judicata to be used to bar a defendant's ineffective assistance claims, even after the claim of ineffective assistance of trial and appellate counsel has been brought up under the defendant's App. R. 26b filing.

ECF Doc. 8-1 at 360.  Whitman's arguments in support of his first proposition of law largely tracked those that he made in his post-conviction petition and briefs to the Ohio Court of

Appeals.  ECF Doc. 8-1 at 364-65.  In support of his second proposition of law, Whitman argued that *res judicata* was improperly applied by the Ohio Court of Appeals because his post-conviction petition was supported by evidence not presented at trial.  ECF Doc. 8-1 at 365-66.  He asserted that the state was withholding the phone and text records, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  ECF Doc. 8-1 at 366.  The state filed a memorandum in response.  ECF Doc. 8-1 at 379.  On May 1, 2019, the Ohio Supreme Court declined to accept jurisdiction.  ECF Doc. 8-1 at 395.

### D.    App. R. 26(B) Application to Reopen Appeal

On August 10, 2018, Whitman filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. R. 26(B) (ECF Doc. 8-1 at 396) alleging that:

> 1.  Appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to inquire into whether a voluntary manslaughter instruction was mandated for Whitman's case.  ECF Doc. 8-1 at 399.
>
> 2.  Appellate counsel was ineffective for failing to raise the issue of the evidence was insufficient to prove weapons under disability under 2923.13(A)(4).  ECF Doc. 8-1 at 403.

Whitman argued that appellate counsel should have argued that trial counsel should have inquired into a voluntary manslaughter instruction.  ECF Doc. 8-1 at 399.  He argued that such an instruction was warranted because the evidence showed that he acted under extreme emotional distress (pointing a gun to his head, stress, contemplating suicide, and provocation by Eadie) and there was insufficient time to cool down before Eadie went back up the stairs.  ECF Doc. 8-1 at 401-02.  Whitman asserted that appellate counsel should also have raised a sufficiency challenge to his conviction for having weapons under disability because there was insufficient evidence to prove that he was a chronic alcoholic.  ECF Doc. 8-1 at 403-05.

13

The state filed a response (ECF Doc. 8-1 at 427), and Whitman filed a reply which largely reiterated the merits of the arguments of his first assignment of error in his initial brief. ECF Doc. 8-1 at 437-40.  On October 22, 2018, the Ohio Court of Appeals denied Whitman's application to reopen on the merits.  ECF Doc. 8-1 at 442-50.  In doing so, the court stated that *Strickland*'s two-prong analysis framework was the appropriate standard to apply for a claim of ineffective assistance of counsel; articulated the two-prong standard: that counsel acted incompetently and that Whitman suffered actual prejudice; and defined prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  ECF Doc. 8-1 at 442-44, 449.

As to both of his claims, the Ohio Court of Appeals concluded that Whitman failed to establish prejudice.  ECF Doc. 8-1 at 449.  As to his first assignment of error, the court reasoned:

> [Whitman] admitted to killing Eadie, but claimed he acted in self-defense. [Whitman] raised a complete defense to the charge of murder—self-defense. His testimony did not give rise to an issue of voluntary manslaughter, which is in effect, an incomplete defense to the charge of murder.  An instruction on voluntary manslaughter and self-defense is erroneous because the two legal theories are incompatible. . . . Voluntary manslaughter requires that the defendant be under the influence of sudden passion or a fit of rage, while self-defense requires the defendant to be in fear for his own personal safety. . . . .
>
> Here, the record is devoid of any evidence that appellant acted out of sudden passion or rage, and in fact, [Whitman] testified he feared for his life because Eadie had beaten him once and he didn't want to be beaten again.  An instruction upon voluntary manslaughter would not have been appropriate and trial counsel was not ineffective in failing to request one.
>
> Appellate counsel was not ineffective [for not] arguing [Whitman] should have requested an instruction upon voluntary manslaughter.  [Whitman's] first proposed assignment of error is overruled.

ECF Doc. 8-1 at 445-46 (citations omitted).  As to his second assignment of error, the court reasoned:

[T]he record is replete with evidence [Whitman] is a chronic alcoholic.  A trial witness described him as "visibly intoxicated" on the day of the shooting; his own witness—[Janeann]—testified he is a chronic alcoholic and his all-day drinking caused the problems that led to the murder; he had to be given six hours to sober up after the shooting before he could make a coherent statement to police; and contrary to his claims here, [Whitman] testified he drank "a significant amount" of whiskey and Sprite that day.  . . . .

The jury could reasonably find [Whitman] is a chronic alcoholic such that his conviction upon having weapons while under disability is supported by sufficient evidence.  Appellate counsel was not ineffective in failing to raise [Whitman's] second proposed assignment of error, which is overruled.

ECF Doc. 8-1 at 448.

On November 26, 2018, Whitman filed a *pro se* notice of appeal in the Ohio Supreme Court.  ECF Doc. 8-1 at 451.  His memorandum in support of jurisdiction set forth two propositions of law:

1.  Whether appellate counsel was ineffective for failing to raise the issue of trial counsel being ineffective for failing to request a lesser included offense instruction?

2.  Whether appellate counsel was ineffective for failing to raise the issue of the evidence was insufficient to prove weapons under disability under O.R.C. 2923.13.

ECF Doc. 8-1 at 453.  Whitman argued that the Ohio Court of Appeals' decision conflicted with Ohio Supreme Court precedent and reiterated the arguments raised in his Rule 26(B) motion.  ECF Doc. 8-1 at 453-63.  The state filed a memorandum in response.  ECF Doc. 8-1 at 473.  On February 6, 2019, the Ohio Supreme Court declined jurisdiction and dismissed the case pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4).  ECF Doc. 8-1 at 486.

## E.  Second Petition for Post-Conviction Relief

On April 15, 2019, Whitman filed a second petition for post-conviction relief and requested an evidentiary hearing.  ECF Doc. 8-1 at 487.  Whitman raised the following claims:

1.  Failure to provide retroactive application of changes to R.C. 2901.05 in Ohio HB 228 would be a violation of Due Process under the 14th Amendment of the U.S. Constitution.  ECF Doc. 8-1 at 488.

2.  Defendant was denied a fundamentally fair trial, guaranteed by the 14th Amendment Due Process/fair trial clause, due to the cumulative effects of errors in jury instructions.  ECF Doc. 8-1 at 492.

3.  Weapons under disability conviction is not supported by sufficient evidence, R.C. 2923.13 and R.C. 2923.14.  ECF Doc. 8-1 at 493.

As relevant here, Whitman argued the exception under Ohio Rev. Code  2953.23 for successive post-conviction petitions applied to his claims because on March 28, 2019 the Ohio legislature amended Ohio Rev. Code § 2901.05 to remove the burden on the defendant to prove the elements of self-defense and make the state disprove the elements beyond a reasonable doubt.  ECF Doc. 8-1 at 488-89.  He argued that the amendments applied to him because his conviction was not final at the time of enactment, as his appeal to the Ohio Supreme Court on the denial of his post-conviction petition was still pending.  ECF Doc. 8-1 at 488.  He further argued that the law should be applied retroactively as a past decision of the U.S. Supreme Court.  ECF Doc. 8-1 at 488-92.

Whitman argued that Castle Doctrine instructions should have been given, and had they, no instruction on excessive force would have been given.  ECF Doc. 8-1 at 492.  When coupled with the new changes to Ohio Rule 2901.05, which made the jury instructions on self-defense erroneous, their cumulative effect was the deprivation of a fundamentally fair trial, in violation of the Fourteenth Amendment.  ECF Doc. 8-1 at 492-93.

The state filed a response (ECF Doc. 8-1 at 506) and Whitman filed a reply, further expanding upon his first claim.  ECF Doc. 8-1 at 522-31.  The trial court denied Whitman's second petition for post-conviction relief as untimely and barred by the doctrine of *res judicata.*  ECF Doc. 8-1 at 523.

16

On June 14, 2019, Whitman filed a *pro se* appeal (ECF Doc. 8-1 at 533), asserting one assignment of error – that the trial court erred in denying his second post-conviction petition.[3] ECF Doc. 8-1 at 536-553.  The substance of his brief largely mirrored his post-conviction petition.  *Id.*  The state filed an appellee brief.  ECF Doc. 8-1 at 554.  Whitman filed a reply, reiterating that the amendments to Ohio Rev. Code § 2901.05 applied retroactively to his case. ECF Doc. 8-1 at 573-82.

On October 7, 2019, the Ohio Court of Appeals affirmed the trial court's denial of Whitman's second petition for post-conviction relief.  ECF Doc. 8-1 at 584-89.  The court determined that Whitman failed to satisfy Ohio Rev. Code § 2953.23's exception to successive petitions because, first, the changes to Ohio Rev. Code § 2901.05 did not apply retroactively under Ohio law.  ECF Doc. 8-1 at 587-88.  Second, the court determined that Whitman's other arguments in his second post-conviction petition were barred under the doctrine of *res judicata*.  ECF Doc. 8-1 at 588.

On October 24, 2019, Whitman filed a *pro se* appeal in the Ohio Supreme Court.  ECF Doc. 8-1 at 598-99.  Whitman's memorandum in support of jurisdiction asserted the following propositions of law:

> 1.  Is appellant entitled to retroactive application of the substantive new rules of criminal procedure provided in the amended version of R.C. 2901.05 and the burden of proof beyond a reasonable doubt being placed on the state to prove that the accused did not use force in self-defense?  Absence of self-defense is now an element of the charge.  Rendering this conviction in violation of, *In re Winship,* 397 U.S. 358 and *Jackson v. Virginia,* 443 U.S. 307.  Violating the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution.  Thus statutorily and Constitutionally void.

---

[3] Whitman's initial brief did not specify any assignments of error.  ECF Doc. 8-1 at 536-553. However, the Ohio Court of Appeals construed his brief as asserting only that "the trial court erred in denying appellant's petition to vacate and set aside judgment of conviction and sentence."  ECF Doc. 8-1 at 586.

2.  The trial court of common pleas and appeals court of the Fifth District have violated appellant's rights to Due Process under the Ohio Constitution Art. I, § 10, and the U.S. Constitution's Fourteenth and Sixth Amendments by denying the constitutionally required retroactive application of fundamental and substantive constitutional rules of criminal procedure within the amended version of R.C. 2901.05 and R.C. 9.68.

3.  Given the recent ruling by this court in *State v. Parker,* 2019-Ohio-3848 concerning the filings of untimely or successive post-conviction motions to vacate void convictions and sentences under R.C. 2953.23.  What? If any adequate state remedy is available to obtain the relief of retroactive application of the constitutionally required retroactive application of fundamental and substantive constitutional rules of criminal procedure within the amended version of R.C. 2901.05 and R.C. 9.68.  As this conviction and sentence is now statutorily and constitutionally void.

ECF Doc. 8-1 at 601-602.  Whitman's supporting arguments largely mirrored those raised in his post-conviction petition and briefs to the Ohio Court of Appeals, with the exception that he raised no issue concerning cumulative error.  ECF Doc. 8-1 at 604-18.  The state filed a memorandum in response.  ECF Doc. 8-1 at 634.  On December 31, 2019, the Ohio Supreme Court declined to accept jurisdiction.[4]

## II.    Federal Habeas Corpus Petition

On August 9, 2019, Whitman filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF Doc. 1), raising ten grounds for relief:[5]

**Ground One:** The trial court's refusal to provide Castle Doctrine instructions to the jury deprived Whitman of his right to a fair trial and present a defense, in violation of the Sixth and Fourteenth Amendments (ECF Doc. 1 at 6-7);

**Ground Two:** Prior acts evidence was admitted at trial in violation of Fed. R. Evid. 402 and the Ohio Rules of Evidence (ECF Doc. 1 at 7);

**Ground Three:** Trial counsel was ineffective for not investigating police misconduct in altering the scene of the offense, to wit: moving Eadie's body (ECF Doc. 1 at 8-9);

---

[4] Docket for Ohio S. Ct. Case No. 2019-1451.
[5] Whitman's facts and arguments in support of his claims will be presented claim-by-claim below.

**Ground Four:** Trial counsel was ineffective for not obtaining a statement or deposition from Nicholas (ECF Doc. 1 at 10);

**Ground Five:** Trial counsel was ineffective for not obtaining phone and text records (ECF Doc. 1 at 11-12);

**Grounds Six, Seven, and Eight:** Appellate counsel was ineffective for not: (1) raising an ineffective-assistance claim based on trial counsel's failure to request a lesser-included offense instruction; (2) raising a challenge to the sufficiency of the evidence on his having-weapons-under-disability conviction; (3) prosecutorial misconduct; and (4) not sufficiently arguing for why Castle Doctrine instructions should have been given (ECF Doc. 1 at 13-17);[6]

**Ground Nine:** Whitman was entitled to retroactive application to the March 28, 2019 changes to Ohio Rev. Code § 2901.05 (ECF Doc. 1 at 18-19); and

**Ground Ten:** The cumulative effect of Grounds One and Nine denied Whitman of a fair trial, in violation of the Sixth and Fourteenth Amendments (ECF Doc. 1 at 20).

Warden Gray filed a return of writ on December 13, 2019 opposing Whitman's claims on the merits.  ECF Doc. 8.  On March 23, 2020, Whitman filed a traverse.  ECF Doc. 25.  In his traverse, Whitman expressly states that he has "Voluntarily Withdrawn for Judicial Efficiency" his Ground Four, Seven, and Eight claims.  ECF Doc. 25 at 86, 108.

## III.  Facts

Our analysis of Whitman's petition must begin with the factual findings of the Ohio Courts.  The Ohio Court of Appeals summarized the relevant facts as follows:

{¶ 3} [Richard Whitman] is the brother of Janeann Whitman.  On November 28, 2016, [Whitman] was living in an upstairs bedroom in Janeann's residence . . . . Janeann's niece, Kendra Brabazon, also lived at the residence with her two small children.  Kendra was staying at the house temporarily.  Consequently, Kendra's boxes, furniture, and mattresses were scattered around the house.

{¶ 4} [Whitman] is described as a chronic alcoholic who was usually intoxicated, and Kendra described [him] as visibly intoxicated on November 28, 2016.  That morning, a dispute arose while Janeann was at work.  Kendra and [Whitman]

---

[6] Although listed as separate claims, Whitman's Ground Six, Seven, and Eight claims present overlapping assertions of ineffective assistance of appellate counsel, so they are presented and will be addressed together.

19

briefly argued when [he] came downstairs and told Kendra to take his dogs out; she said she would "in a minute." [Whitman] returned upstairs but came back down to find Kendra's children pulling toys out of boxes. [He] became agitated because he had cleaned the toys up at one point. [Whitman] told Kendra and the children to put the toys away but Kendra said they didn't have to. [Whitman] briefly returned upstairs, came back down, grabbed a box of toys, and took it outside. He placed Kendra's property in the front yard and said Kendra and her children could "get out."

{¶ 5} Kendra called Janeann at work and told her about the confrontation. Kendra and the children then left the house to go to the restaurant where Janeann was working. Janeann called [Whitman] and told him to put Kendra's property back in the house and chided him that it wasn't up to him to throw Kendra out of the house.

{¶ 6} Janeann also called a friend, David Eadie, and asked him to go to the house to make sure [Whitman] brought Kendra's property back inside. Eadie and Janeann had worked together, dated, and lived together at one point. Their relationship was now described as "friends" but Janeann and Kendra acknowledged they relied on Eadie to help them frequently, with virtually "everything." Eadie agreed to meet Kendra at the house upon her return.

*The first encounter between Eadie and appellant: Eadie admonishes appellant for putting Kendra's property out*

{¶ 7} Eadie met Kendra at the house between 12:30 and 1:00 p.m. He walked into the house with Kendra and her children and [Whitman] came downstairs. Eadie said he wanted to talk but [Whitman] told him to get out. Eadie told [Whitman] it was up to Janeann who was allowed to be in the house, and told [him] to leave Kendra and her kids alone. Kendra also testified that Eadie accused [Whitman] of laying around drinking all day, not helping with bills, and said if there was a problem he (Eadie) would take care of it. [Whitman] told Eadie to "take care of it, then" but Eadie said he wasn't going to touch [Whitman] in front of the children.

{¶ 8} [Whitman] went back upstairs and Eadie stayed for a while, talking to Kendra and the kids. Eadie left. Janeann came home from work and Kendra left for a short period.

{¶ 9} When Kendra returned to the house, she found Janeann very upset. Janeann was sitting on the couch texting [Whitman], even though he was in his bedroom upstairs. Janeann told Kendra [he] had taken her gun, a Smith and Wesson .9 millimeter, broken it up, and buried it in pieces in the backyard. Janeann went upstairs and argued in person with [Whitman]. Kendra heard her say, "Don't point that gun at me."

20

{¶ 10}  Kendra climbed over the baby gate at the bottom of the steps and went upstairs to see what the problem was.  She saw [Whitman] holding a .22 shotgun and asked what was going on.  Janeann said [he] took her gun and was now pointing the rifle at her and at himself.  Kendra told Janeann she was taking her kids and leaving.  Janeann told Kendra she didn't know what to do about [Whitman]; she considered calling the police and trying to get him put in jail to sober up, or to get a psychiatric evaluation.  She also considered calling Eadie and asking him again to "handle it."  Kendra told her to call the police and left with her kids; she went to a neighbor's house down the street.

*Second encounter: Eadie takes .22 rifle from appellant*

{¶ 11}  Janeann testified on behalf of [Whitman] at trial.  She acknowledged Kendra called her at work on November 28 and complained about [him] putting her things outside; Janeann called David Eadie and asked him to handle it while she was at work.

{¶ 12}  Janeann described the incident with [Whitman] pointing the .22 rifle in greater detail.  Upon her return home from work, [Whitman] texted her from the bedroom and the two argued.  She went upstairs to confront him and found him sitting on his bed with the .22 rifle.  Janeann testified [Whitman] pointed the rifle first at her and then at himself, but claimed she never felt threatened and he didn't make any threats toward her; instead, Janeann believed he might harm himself.  She said she yelled at him and went back downstairs.  She hoped to distract [Whitman] from hurting himself.

{¶ 13}  Downstairs, Janeann texted another sister and said she intended to call the police, but her sister responded that [Whitman] would "go crazy" if she called the police.  Janeann decided instead to call Eadie again, to "talk him down."  Eadie agreed to return to speak to [Whitman] and Janeann went back upstairs.  [Whitman] remained in his room and she went to her own room.

{¶ 14}  Janeann realized Eadie had returned when she heard a loud "wham," which she said was Eadie slamming [Whitman] against the wall.  Janeann came into the room and tried to pull the two apart, and all three fell to the ground.  Janeann said Eadie was on top of [Whitman] with his hand on his throat.  At one point, though, [Whitman] had a machete in his hand.  Eventually the scuffle ended and Eadie took whatever weapons he could find out of the room, including the machete and the .22 rifle.  Janeann went downstairs and Eadie also came down, placing the rifle behind a mattress.

{¶ 15}  Eadie then attempted to lure [Whitman] downstairs by yelling to him that he was letting [Whitman's] dogs out.

*Third and fatal encounter: Appellant fires on Eadie three times*

21

{¶ 16}  Janeann said Eadie went back upstairs to investigate a strange green light on the wall.  As he climbed the steps, Janeann said she didn't want him to return upstairs because he "just kept beating on [her] brother."  Eadie continued upstairs and Janeann grabbed her phone.

{¶ 17}  She heard three shots from upstairs and ran from the house calling 911.  [Whitman] came downstairs and told her he shot Eadie.  When she asked why, he said "he was coming after me again."

{¶ 18}  In the meantime, when she arrived at the neighbor's house, Kendra discovered a missed call from Janeann and called her back. Janeann said Eadie was at the house beating up appellant, requiring Janeann to get in between them. Kendra told her to call the police but Janeann said her phone was about to die and asked Kendra to call instead.  Kendra refused and Janeann hung up.

{¶ 19}  Kendra waited five minutes and tried to call Janeann again.  There was no answer.  She called Eadie's phone next and he didn't answer.  Kendra felt uneasy. Janeann called her back and told her [Whitman] had just shot Eadie and there was blood everywhere.

{¶ 20}  Upon cross-examination of Janeann by appellee, a different version of the dispute between [Whitman] and his sister emerged.  Janeann acknowledged appellant is a chronic alcoholic and that his all-day drinking caused the problems that led to the shooting.  She also acknowledged she habitually called Eadie to deal with her problems because she knew he would respond instantly and take care of whatever she needed.

{¶ 21}  On the day of the shooting, she texted back and forth with [Whitman], arguing over his treatment of Kendra and the disappearance of Janeann's .9 millimeter firearm.  The texts between Janeann and [Whitman] were introduced at trial as appellee's Exhibit 15.  Janeann and detectives scrolled through messages on her phone on video, revealing the extent of their argument.  [Whitman] taunted Janeann for sending Eadie to the house to deal with him.

{¶ 22}  [Whitman] had taken Janeann's firearm from a drawer in her bedroom, and both Janeann and Eadie were aware he had it, although [Whitman] claimed to have dismantled it and hid it in pieces throughout the backyard.  Janeann knew [he] had access to two guns, her own .9 millimeter and the .22 rifle.  During her own confrontation with him, [Whitman] had pointed the .22 rifle at Janeann and at himself.  She believed [Whitman] was despondent because he knew she was leaving in January to take a new job and no one else would take him in.  The family was sensitive to threats of suicide because another brother of Janeann and [Whitman] had killed himself.

{¶ 23}  Janeann acknowledged the first person who came to mind to help her was David Eadie, and she called him for the express purpose of getting the guns away

22

from [Whitman].  Despite Kendra advising her to call the police, she called Eadie instead and repeatedly asked him to deal with [Whitman], who was armed and drunk.

{¶ 24}  Janeann acknowledged that after the shooting, while she was on the phone with 911, [Whitman] laughed in the background and she had to tell him "there's nothing funny."

*Investigation and appellant's statement to detectives*

{¶ 25}  Several Canton police officers sped to the scene of the reported shooting. They found [Whitman and Janeann] on the porch . . . .  [Whitman] staggered and seemed intoxicated; he mumbled and slurred his speech.  [He] was cuffed and placed in a patrol car and officers cleared the house.  They found David Eadie deceased in the upstairs hallway.  The .9-millimeter Smith and Wesson firearm was located on the bathroom sink with the magazine out and chamber empty.

{¶ 26}  [Whitman] was transported to the Canton Police Department Detective Bureau for questioning.  Detective Prince spoke to [him] about six hours after he arrived; he was initially too intoxicated to make a statement.  He was given time and food to allow him to sober up.

{¶ 27}  [Whitman] said there was an argument and he shot Eadie three times.  He said he "couldn't have made a clearer shot on a deer [he] was trying to kill."  Eadie had taken the .22 rifle and appellant's cell phone during the earlier encounter with [Whitman], when they fought and were separated by Janeann.  [Whitman] told Detective Prince that Eadie struck him so hard in the stomach that he defecated on himself.

{¶ 28}  Eadie went downstairs after the physical altercation and yelled to [Whitman], "You've got two minutes."  He then told [Whitman] he would let [Whitman's] dogs loose out the front door.  Rather than go downstairs, [Whitman] remained in his bedroom and armed himself with the .9-millimeter firearm.  [Whitman] claimed he was aware of an incident in which Eadie had "shot up the house," so he didn't want Eadie to get the .9 millimeter.

{¶ 29}  [Whitman] thus sat on the corner of his bed with the firearm cocked, and as Eadie came up the steps and into the bedroom, [Whitman] said "No" and fired three times.  [Whitman] said he didn't want to hurt anyone but he also did not want to be beaten by Eadie again.  He said he didn't know if Eadie had anything in his hands as he came up the stairs and he "didn't need to know" if he had anything in his hands: [Whitman] didn't want to be hit again.

{¶ 30}  [Whitman] acknowledged Eadie came back upstairs in search of the .9 millimeter, intending to take it from him.  When asked why [Whitman] didn't just give the gun back to Janeann, he claimed she never asked for it.

23

{¶ 31}  [Whitman] did not complain of any injuries to detectives and no visible injuries were observed.

{¶ 32}  Three shell casings were found inside the bedroom.  Eadie was at the doorway of appellant's bedroom; his feet were at the doorway and his head was extended down the hallway, almost to the stairs.  Eadie had been shot in the left side of his head, in the chest, and above his lip.

{¶ 33}  The .22 Mossberg rifle was also recovered from the house; it was found inside the front door, behind a mattress.

*Appellant's trial testimony*

{¶ 34}  [Whitman] testified on his own behalf at trial.  He said he cleaned the house on November 28, 2016 and was angered when Kendra's kids pulled toys out.  He acknowledged he was drinking "a significant amount" of whiskey and Sprite throughout the day.  Eadie came over to the house the first time at Janeann's request, when Kendra complained about [Whitman] putting her property out in the front yard.  [Whitman] acknowledged they argued and Eadie left.

{¶ 35}  [Whitman] and Janeann argued with each other via text message throughout the day, even after she returned from work.  [He] acknowledged he had two guns in his possession at that point: the .22 rifle and his sister's .9 millimeter.  The .9 millimeter was largely the subject of the text arguments, and [Whitman] was handling the .22 rifle, threatening suicide, when Janeann came upstairs to talk to him.

{¶ 36}  Eadie returned to the house, came upstairs to [Whitman's] bedroom, grabbed him and threw him against the wall.  Eadie punched him in the stomach, causing him to soil himself, and Janeann came into the room and pulled the two apart.  Eadie went downstairs with the .22, appellant's cell phone, and a machete appellant had in his bedroom.

{¶ 37}  [Whitman] now claimed Eadie said he would be back upstairs in two minutes to "finish what he started" and to "throw [appellant] out a window."  Eadie yelled upstairs that he was letting appellant's dogs out but appellant "would not allow [himself] to be baited into coming downstairs."  Instead, when he heard Eadie messing with the baby gate at the bottom of the stairs, [Whitman] got the .9 millimeter out from under this mattress, put the magazine into it, chambered a round, and sat with the weapon on his knee.  [Whitman] testified he thought at the time, "God, don't make me have to shoot this asshole."

{¶ 38}  [Whitman] heard Eadie coming up the steps, down the hallway, and into the bedroom doorway.  [Whitman] and Eadie briefly looked at each other, and Eadie saw the gun. [Whitman] said, "No, David," and threw himself backward as

he fired at Eadie three times.  When asked why it was necessary for him to shoot Eadie, [Whitman] replied, "he was there to hurt me" and "he was going to finish the job and throw me out the window."

{¶ 39}  [Whitman] took the magazine out of the gun and placed the gun on the bathroom sink.  He said he kicked Eadie's foot as he stepped over him on his way downstairs after the shooting.  When he spoke to Janeann downstairs, he told her not to go upstairs to check on Eadie because it "wouldn't do any good."

{¶ 40}  Upon cross-examination, [Whitman] acknowledged he did not tell police or anyone else about Eadie's alleged statement that he was coming upstairs to "finish the job" and to throw [Whitman] out the window.  [Whitman] admitted he didn't care whether Eadie had anything in his hands (such as a weapon) when he came back upstairs because [Whitman] was going to shoot him no matter what. He picked up the gun, put in the magazine, and chambered a round when he heard Eadie stepping over the baby gate at the bottom of the stairs.

ECF Doc. 8-1 at 141-50.  These state court factual findings are presumed correct unless Whitman rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);  *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

## IV.     Law and Analysis

To obtain a writ of habeas corpus, Whitman has the burden to prove that he is "in custody in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  I conclude that Whitman has failed to establish a right to federal habeas relief on any of his claims.

### A.     Ground One: Castle Doctrine Instructions

#### 1.     Parties' Arguments

In his Ground One claim, Whitman asserts that his right to a fair trial and present a defense under the Sixth and Fourteenth Amendments were violated when the trial court refused to give the jury Castle Doctrine instructions.  ECF Doc. 1 at 5.  He contends that the Ohio Court of Appeals' determination that the error was harmless was a misapplication of

*Chapman* because it is inherently prejudicial to deny a legally accurate jury instruction that is pertinent to the case.  ECF Doc. 1 at 5-6.

Warden Gray responds that Whitman's Ground One claim is not cognizable on federal habeas review because the instruction that was given was accurate under state law; the instruction was not so "ailing" to result in a violation of due process; and errors in jury instructions are generally matters of state law that are not cognizable on federal habeas review.  ECF Doc. 8 at 37-39.  Warden Gray further argues that Whitman's Ground One claim is meritless because the Ohio Court of Appeals reasonably concluded that Whitman failed to establish prejudice on account of the trial court's omission.  ECF Doc. 8 at 40-49.

In his traverse, Whitman argues that his Ground One claim *is* cognizable because the Ohio courts' errors resulted in the denial of his due process rights to present a complete defense and to a fair trial and equal protection under the law.  ECF Doc. 25 at 11-15. Whitman argues that in denying his requested instructions, the trial court unreasonably determined the facts when it concluded that he was only a "temporary resident" and that Eadie had a right to be in the home, because the evidence showed that he resided at Janeann's residence and Eadie's right was revoked upon attacking Whitman.  ECF Doc. 25 at 22-23, 38-43.  He argues that the Ohio Court of appeals misapplied *Chapman* because it invaded the province of the jury and ignored the evidence that would have supported a finding of not guilty had Castle Doctrine instructions been provided.  ECF Doc. 25 at 25-27, 34, 48-49, 58-60.  Specifically, Whitman argues that the fact that self-defense instructions were given at all showed that he was not the first aggressor; Eadie's larger size and weight, initial assaults, possession of Whitman's guns, threat that he would return, and his charge when he reached the top of the stairs made Whitman fear an immediate attack that could result in serious bodily

26

harm or death; and he did not have to establish that he had no duty to retreat had Castle

Doctrine instructions been given.[7] ECF Doc. 25 at 42-45, 47, 59-60.  Whitman also contends

that the Ohio Court of Appeals disregarded Ohio precedent finding it reversible error to deny

Castle Doctrine instructions when they are applicable.  ECF Doc. 25 at 49, 51-58.

### 2. Cognizability

To the extent Whitman challenges the Ohio courts' application of state law to

determine that Castle Doctrine instructions were not warranted or that – as a matter of state

law – the refusal to provide those instructions was harmless, his argument is non-cognizable.

See ECF Doc. 25 at 49, 51-58; *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions.  In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States.").

State court rulings on issues of state law may, however, "rise to the level of due

process violations [if they] 'offend[] some principle of justice so rooted in the traditions and

conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542,

552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  They must be "so

egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d

496, 512 (6th Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised

where "the action complained of . . . violates those 'fundamental conceptions of justice which

---

[7] Whitman also argues that the trial court erred by withholding adjudication on his motion for self-defense jury instructions; the trial court unreasonably refused to acquit him; the Ohio courts were biased against him; the trial court engaged in *ex parte* communications with the prosecution; and the state misstated the facts at trial.  ECF Doc. 25 at 15, 20-21, 22, 34, 45.  Because these grounds were raised for the first time in Whitman's traverse, they are forfeited and will not be addressed further. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the . . . argument was first presented in [petitioner's] traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it.").

lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Courts, therefore, '"have defined the category of infractions that violate 'fundamental fairness' very narrowly."' *Bugh*, 329 F.3d at 512 (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

There is nothing about the Ohio courts' disposition of Whitman's Castle Doctrine instruction claim that violated fundamental conceptions of justice or anyone's sense of fair play and decency.  At worst, the jury may have considered whether Whitman should have retreated upon Eadie's arrival at the bedroom door.  But my review of the trial record reveals nothing from which we could call into question the Ohio Court of Appeals' findings that

> {¶ 64} . . . the relative statuses of Eadie and [Whitman] in the home, and [Whitman's] duty to retreat or lack thereof, were not debated questions of fact at trial.  The issues were whether [Whitman] was at fault in creating the affray and whether he reasonably believed shooting Eadie was his only choice to avoid great bodily harm or death."

*State v. Whitman*, 2018-Ohio-2924 at ¶ 64; ECF Doc. 8-1 at 158.  Failing to instruct a jury on an issue that was barely tried is, as the state court of appeals concluded, harmless error at worst and not a violation of Whitman's right to a fundamentally fair proceeding.  I recommend that the Ground One claim be dismissed as noncognizable.

### 3.    Procedural Default

Although not raised by Warden Gray, Whitman's Ground One claim is procedurally defaulted.  *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (stating that a court may raise procedural default *sua sponte*, even if waived by the state).  Procedural default is "a critical failure to comply with state procedural law," *Trest v. Cain*, 522 U.S. 87, 89 (1997), resulting in a bar to federal habeas review unless the petitioner makes the requisite showing, *Coleman*

*v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when: (1) the state courts didn't review the petitioner's claim on the merits because he didn't comply with some state procedural rule; or (2) he failed to fairly present the claim to the state courts while state court remedies were still available. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). To fairly present a claim in state court, the petitioner must have asserted both the legal and factual basis for his claim. *Id.* The claim must be presented as a federal constitutional issue, not merely one arising under state law. *Id.* If the petitioner didn't raise the federal constitutional issue at *every stage* of the state court review process, the claim is procedurally defaulted. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010).

Procedural default will not preclude consideration of a claim on federal habeas review, however, if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

Whitman's Ground One claim is procedurally defaulted because it was not fairly presented *as a federal constitutional claim* to the Ohio courts. Specifically, he failed to raise it at every stage of the state review process: he did not argue in his direct appeal to the Ohio Supreme Court that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of *Chapman*. *Thompson*, 598 F.3d at 285; ECF Doc. 8-1 at 174-86. And Whitman cannot raise the issue now because Ohio's post-conviction statute bars consideration

of any issue that could have been fully litigated on direct appeal.  Ohio Rev. Code §
2953.21(A)(1)(i) (barring consideration of claims barred by the doctrine of *res judicata*); *State
v. Perry*, 10 Ohio St.2d 175, 176 (Ohio 1967) ("Under the doctrine of res judicata, a final
judgment of conviction bars the convicted defendant from raising and litigating in any
proceeding, except an appeal from that judgment, any defense or claimed lack of due process
that was raised or could have been raised" at trial or on direct appeal.).  Thus, Whitman's
Ground One claim is procedurally defaulted.  *Thompson*, 598 F.3d at 285.

Whitman has not addressed, much less established, cause to excuse his procedural
default because he has not asserted that some external factor prevented him from raising the
issue.  *See Murray v. Carrier*, 477 U.S. 478, 487 (1986) ("[T]he existence of cause for
procedural default must ordinarily turn on whether the prisoner can show that some objective
factor external to the defense impeded [his] efforts to comply with the State's procedural
rule.").  Whitman's *pro se* status and ignorance of the law would be insufficient to establish
"cause."  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  Whitman's inability to
establish cause makes it unnecessary to consider whether he has shown prejudice.  *Matthews
v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) ("The cause-and-prejudice analysis is a
conjunctive one, requiring a petitioner to satisfy both prongs to excuse a procedural default.").
And he never raised an argument that he is actually innocent of the offense.  *Bousley v. United
States*, 523 U.S. 614, 623 (1998) ("[A]ctual[] innocen[ce]" means "factual innocence, not
mere legal insufficiency."); *see generally* ECF Doc. 1; ECF Doc. 25.  Thus, in addition to a
lack of cognizability problem, Whitman's Ground One claim could be dismissed as
procedurally defaulted.

4.       **Merits**

Even though Whitman's Ground One claim is procedurally defaulted, the Court may

nevertheless choose to consider the claim on the merits under *de novo* review. *Lambrix v.*

*Singletary*, 520 U.S. 518, 525 (1997) (courts can ignore complicated procedural bar issues if

the merits are easily resolvable against the petitioner).

Because the Ohio Court of Appeals addressed Whitman's trial-court Castle Doctrine

error claim on the merits, Whitman's Ground One claim is subject to the deferential

reasonableness standard under the Antiterrorism and Effective Death Penalty Act of 1996,

Pub. L. 104-132, 110 Stat. 124 ("AEDPA"). *Mays v. Hines*, No. 20-507, manuscript op. at 6,

592 U.S. ___ (Mar. 29, 2021) (*per curiam*). Under AEDPA, habeas relief is available only

when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant question isn't whether the state court got it right or wrong,

but whether the state court's determination was "unreasonable—a substantially higher

threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] strong case for relief does

not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562

U.S. 86, 102 (2011). The prisoner must show that the state court's "decision was so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Id.* at 103.

The standard for reviewing a state court's failure to properly instruct the jury on the

elements of the offense that was adjudicated on direct review was set forth in *Chapman*.

31

*Neder v. United States*, 527 U.S. 1, 4 (1999).  In *Chapman*, the Supreme Court declined to

adopt a rule requiring automatic reversal of state court convictions that suffer from a federal

constitutional error.  386 U.S. at 21-22.  Instead, the Court held that a federal constitutional

error can be considered harmless, but only when the reviewing court is "able to declare a

belief that it was harmless beyond a reasonable doubt."  *Id.* at 24.  The question under

*Chapman* is whether "absent the constitutional [error], honest, fair-minded jurors might very

well have brought in not-guilty verdicts."  *Id.* at 26.

 The Ohio Court of Appeals decision on direct appeal was not contrary to *Chapman*.

The Ohio Court of Appeals correctly observed that a failure to instruct the jury is subject to

harmless-error review, as stated in *Chapman*.  ECF Doc. 8-1 at 151-52.  Even though the court

did not articulate the elements of the *Chapman* standard, its conclusions that the lack of Castle

Doctrine instructions "had no effect on the inescapable conclusion drawn from the evidence"

– that Whitman did not act in self-defense and failed to present evidence that would have

supported an acquittal – were consistent with the *Chapman* standard.  *Compare* 386 U.S. at

26, *with* ECF Doc. 8-1 at 158-59.  Thus, the state court's decision was not contrary to

*Chapman*.  *See* 28 U.S.C. 2254(d)(1).

 Nor did the Ohio Court of Appeals' decision involve an unreasonable application of

*Chapman*.  As the state court observed, to succeed in a defense of self-defense involving the

use of deadly force, Whitman had to establish that he: (1) was not at fault in creating the

situation giving rise to the use of force; (2) (i) had a *bona fide* belief that he was in imminent

danger of death or great bodily harm and (ii) his only means of escape was the use of deadly

force; and (3) did not violate any duty to retreat or avoid the danger.  ECF Doc. 8-1 at 152-53;

*see also State v. Lewis*, 976 N.E.2d 258, 261 (Ohio Ct. App. 2012).  The Castle Doctrine

creates an exception to the third requirement. *Lewis*, 976 N.E. 2d at 261; *see also* Ohio Rev. Code § 2901.09(B) ("[A] person who lawfully is in that person's residence has no duty to retreat before using force in self-defense."). A separate but related rule is the rebuttable presumption of self-defense created by Ohio Rev. Code § 2901.05, which applies when the victim was not lawfully in the residence. Ohio Rev. Code § 2901.05(B).

The relative statuses of Whitman and Eadie were undisputed, so the Ohio Court of Appeals reasonably determined that the presumption of self-defense did not apply. ECF Doc. 8-1 at 154, 157-58; *see also* ECF Doc. 8-1 at 60-66, 113-26; ECF Doc. 8-2 at 130-48; ECF Doc. 8-3 at 253-96. In fact, Whitman never sought an instruction under Ohio Rev. Code § 2901.05. ECF Doc. 8-1 at 36. Therefore, Whitman needed to establish both the first and second elements of self-defense to succeed under the Castle Doctrine. *State v. Jackson*, 22 Ohio St.3d 281, 284 (Ohio 1986) ("[T]he elements of self-defense are cumulative."). As the Ohio Court of Appeals concluded, when the jury rejected Whitman's self-defense claim and found him guilty, it necessarily concluded that Whitman failed to establish one or both of the first two elements of the defense. ECF Doc. 8-1 at 158-59. If the jury had rested its finding on the third element, it would have had to conclude that Whitman was at fault or did not reasonably believe that he was in imminent danger or that deadly force was the only means by which he could escape. ECF Doc. 8-3 at 237-38 (instructing the jury that Whitman had a duty to retreat if (1) he was at fault or (2) did not reasonably believe that he was imminent and immediate danger of death or great bodily harm or that he had no other means of escape other than the use of deadly force). Therefore, the state court's determination that Castle Doctrine instructions would have had no effect on the verdict was not an unreasonable application of *Chapman*'s harmless error standard. *See* 28 U.S.C. § 2254(d)(1).

We can say more about Whitman's interpretation of the Castle Doctrine to show why the Ohio Court of Appeals harmless error analysis was on the mark.  Whitman seems to think that he, sitting in his bedroom, could treat Eadie the way one may treat a home invader: with an absolute right to use deadly force as soon as the person enters the home.  But as the state appellate court noted, that is not what the facts of the case were.  Both Whitman and Eadie claimed a right to be present in the home, the "castle."  And nothing in homeowner Janeann's testimony undermined their respective beliefs.  While a Castle Doctrine instruction *could* have been given (and perhaps, as the Ohio Court of Appeals ruled *should* have been given), Whitman would still have had to show that he was not at fault in creating the situation and that shooting Eadie was his only option.  He would not have had the right to be exonerated simply by showing that as the occupier of his bedroom "castle" he had an unconditional right to shoot and kill Eadie.  Thus, the conclusions by the jury and the Ohio Court of Appeals that Whitman had failed on the first two elements of self-defense rendered the alleged failure to retreat irrelevant.

### 5.    Ground One Summary

To the extent that Whitman's Ground One claim challenges the Ohio courts' determinations under Ohio law that Castle Doctrine instructions were not warranted or that the failure to give said instructions was harmless error, it is non-cognizable.  I recommend that Whitman's Ground One claim be DISMISSED on that basis.  And because Whitman failed to fairly present to the Ohio courts his claim as a federal constitutional claim that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of *Chapman*, I recommend that the Court also find that his Ground One claim should be DISMISSED as

34

procedurally defaulted.  In the alternative, the Court may choose to deny the claim on the merits.

### B.    Ground Two: Prior Acts Evidence

#### 1.    Parties' Arguments

In his Ground Two claim, Whitman argues that testimony of his prior acts was admitted at trial to establish his state of mind, in violation of Ohio and Federal Rule of Evidence 402.  ECF Doc. 1 at 7.  Whitman asserts that the state and the defense told the trial court that they wished to offer other acts evidence, Whitman about Eadie and the state about Whitman.  *Id.*  Whitman claims the trial court erred when it gave the parties an all-or-nothing choice of either admitting prior acts evidence about both witnesses or not admitting any such evidence about either of them.  *Id.*  Also, Whitman complains that the trial court also erred by preventing him from answering questions relevant to his statement of mind.  *Id.*  He argues that the trial court's actions deprived counsel of an equal opportunity to question and examine him on the state-of-mind evidence that he was trying to present.  *Id.*

Warden Gray responds that Whitman's Ground Two claim is not cognizable on federal habeas review because there is no Supreme Court precedent holding that the admission of other acts evidence can be a due process violation.  ECF Doc. 8 at 50-52.  And Warden Gray avers that "an abuse of discretion *vel non*, in this case by the trial court admitting the evidence, is generally not cognizable."  ECF Doc. 8 at 51.  Warden Gray further argues that Whitman's Ground Two claim is procedurally defaulted because, although he raised it on direct appeal, he did not present the claim to the Ohio Supreme Court.  ECF Doc. 8 at 52.  Warden Gray argues that Whitman cannot establish cause or prejudice because he proceeded *pro se* before the Ohio Supreme Court and the admitted evidence consisted of a minor non-

35

criminal event and a characterization that Whitman elicited from his own witness.  ECF Doc. 8 at 53.  Warden Gray also argues that Whitman's Ground Two claim would fail even if not procedurally defaulted because this court must defer to the Ohio Court of Appeals' finding that trial court did not abuse its discretion in admitting the challenged evidence.  ECF Doc. 8 at 54-57.

In his traverse, Whitman reiterates that the admission of prior bad acts evidence violated Ohio and State evidentiary rules, adding that the trial court's all-or-nothing condition violated the "Unconstitutional Condition's Doctrine" by forcing Whitman into a position to waive all or some of his constitutional rights: due process, fair trial, and confrontation.  ECF Doc. 25 at 60-63.  He argues that evidence of the "Kalahari incident" was prejudicial because it was irrelevant and served only present evidence of Eadie's peaceful character.  ECF Doc. 25 at 63-64.  Whitman argues that the trial court violated his due process rights by stopping him from testifying about Eadie's October 2016 act of shooting a hole in the floor while in a rage or about continuing threats by Eadie, which were relevant to Whitman's state of mind at the time of the offense.  ECF Doc. 25 at 64-65.  He argues that the Ohio Court of Appeals misapplied the rules of evidence and ignored the unconstitutional condition to support a wrongful conviction.  ECF Doc. 25 at 65-66.  Whitman argues that the Ohio Court of Appeals' decision was the result of an unreasonable determination of the facts because there was no way to know the effect of the evidence on the jury; his motion in limine established that Eadie in fact shot the gun on the floor and that Janeann was telephonically present; Eadie was drunk and arguing with his son during the "Kalahari incident;" and the role that the court stated alcohol played in the offense was overstated given the lack of evidence about his intoxication level.  ECF Doc. 25 at 70-71.

36

Last, Whitman argues that he did not present his Ground Two claim to the Ohio Supreme Court because he was misled by another inmate to believe that (1) by sending a copy of the Ohio Court of Appeals' decision to the Ohio Supreme Court, the Ohio Supreme Court would be on notice of all the issues he would appeal; (2) given the page limit, the memorandum in support of jurisdiction should represent only the most important issue within the Ohio Court of Appeals' decision and present the strongest argument for jurisdiction; and (3) once jurisdiction were accepted, he could brief all the issues raised on direct appeal. ECF Doc. 25 at 61.

### 2. Cognizability

To the extent that Whitman's Ground Two claim asserts that the trial court erred in its evidentiary rulings, the claim is not cognizable on federal habeas review. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) ("In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."). Whitman's Ground Two claim is cognizable, however, if the trial court's evidentiary rulings were so egregious as to constitute a due process violation. *Id.* ("A federal court may . . . grant relief in cases where the state court's evidentiary ruling is so fundamentally unfair that it rises to a due-process violation." (quotation marks omitted)).

### 3. Procedural Default

Even if cognizable, Whitman's Ground Two claim is procedurally defaulted because he failed to present it at each stage in Ohio's review process. *Id.* Specifically, Whitman failed to raise it in his memorandum of support to the Ohio Supreme Court. *Thompson*, 598 F.3d 285; ECF Doc. 8-1 at 174-86. And as with his Ground One claim, Whitman cannot do so

now.  *See* Ohio Rev. Code § 2953.21(A)(1)(i); *Perry*, 10 Ohio St.2d at 176.  Thus, Whitman's

Ground Two claim is procedurally defaulted.  *See Williams*, 460 F.3d at 806.

Whitman cannot overcome his procedural default because he failed to establish cause.

*Coleman*, 501 U.S. at 750.  Whitman's excuse for not raising his Ground Two claim is that he

was misled into believing that he did not have to include it in his memorandum in support of

jurisdiction.  But he was required to do just that.  *Estate of Ridley v. Hamilton Cty. Bd. of*

*Mental Retardation and Developmental Disabilities*, 102 Ohio St.3d 230, 232 (Ohio 2004)

(declining to address a claim that was not included among the appellant's propositions of law

in its memorandum in support of jurisdiction).  Whitman's *pro se* status and ignorance of the

law is insufficient to establish cause.  *Bonilla*, 370 F.3d at 498.  His inability to establish cause

makes it unnecessary to consider whether he showed prejudice, and he raises no claim of

actual innocence.  *Matthews*, 486 F.3d at 891; *see generally* ECF Doc. 1; ECF Doc. 25 at 60-

70.  I recommend Whitman's Ground Two claim be dismissed as procedurally defaulted.

### 4.    Merits

Even if the court overlooked the cognizability and procedural default issues,

Whitman's Ground Two claim would nevertheless fail on the merits.  *Lambrix*, 520 U.S. at

525.  When a state court has not adjudicated a claim on the merits, the federal habeas court

reviews the claim *de novo*.  *Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004).

As discussed above, an evidentiary ruling can be so egregious that it results in a denial

of fundamental unfairness, warranting habeas relief.  *Moreland*, 699 F.3d at 923.

"Nonetheless, courts have defined the category of infractions that violate 'fundamental

fairness' very narrowly."  *Bugh*, 329 F.3d at 512 (quotation marks omitted).  This standard

generally is only met if the evidentiary rulings "offend some principle of justice so rooted in

the traditions and conscience of our people as to be ranked as fundamental." *Id.* (alterations and quotation marks omitted).  Additionally, to establish a due process violation on account of the trial court's evidentiary rulings, Whitman must point to a Supreme Court case establishing a due process violation occurs when the specific kind of evidence is admitted.  *Moreland*, 699 F.3d at 923.  But the Sixth Circuit has observed that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  Thus, Whitman cannot show that any state court ruling dealing with the admission of prior acts evidence was contrary to or an unreasonable application of a non-existent Supreme Court due process standard.  As a result, his Ground Two claim would fail on the merits if the Court chose to overlook the cognizability and procedural default defects.

To the extent Whitman's Ground Two claim is construed as raising a due process challenge to the trial court's rulings limiting his testimony regarding the October 2016 floor-shooting incident, the court's ruling did not render his trial fundamentally unfair.  Whitman contends that additional testimony would have shown that Eadie shot up the house because he was upset that Janeann was leaving Ohio and involved with another man and that Eadie's son had called to ask what to do.  ECF Doc. 25 at 68.  But – as asserted at trial – the relevance of the October 2016 floor-shooting related to Whitman's state of mind when he shot Eadie: that he acted in self-defense.  ECF Doc. 8-3 at 177.  The fact of the floor-shooting was what mattered, and that came into evidence.  Whitman argued during closing that the floor-shooting incident was in his mind when he shot Eadie, that Eadie shot up the house in a rage, and that Eadie was "unstable enough to shoot up the house."  ECF Doc. 8-3 at 281.  The jury therefore had a chance to consider the floor-shooting incident in deliberating on Whitman's self-defense

claim but nevertheless rejected it and found him guilty.  Thus, Whitman cannot establish that his inability to testify about Eadie's reasons for shooting up Janeann's house rendered his trial fundamentally unfair.  *Moreland*, 699 F.3d at 923.  This portion of Whitman's Ground Two claim, therefore, fails on the merits.

### 5. Ground Two Summary

To the extent Whitman challenges the Ohio courts' rulings on the admission of prior acts evidence under Ohio law, they are non-cognizable and can be dismissed on that basis. And because Whitman failed to fairly present to the Ohio courts his claim that the admission of prior acts evidence violated his federal constitutional rights, I recommend that Whitman's Ground Two claim be DISMISSED as procedurally defaulted.  In the alternative, the Court can find that the Ground Two claims lack merit.

### C. Ground Three: Counsel's Failure to Investigate Alteration of Crime Scene

In his Ground Three claim, Whitman argues that he informed trial counsel that Eadie's body had been moved before investigators took photographs and 3D scans of the scene of the crime.  ECF Doc. 1 at 8.  Whitman's attorneys later told Whitman that they had reviewed the police body camera footage and that the footage did not show police moving Eadie's body. *Id.*  Whitman asserts that counsel lied to him because the body cam footage published at trial "clearly showed the first 2 officers on the scene struggling to drag Mr. Eadie off of the wall and down the hall way." *Id.*  The police officers' actions, Whitman argues, substantially altered the scene of the shooting and allowed the state to falsely claim at trial that Eadie was six to nine feet from Whitman at the time that Whitman fired – too far away to be a threat. *Id.* Whitman contends that Eadie was at most two to three feet away, which, when coupled with Eadie's size and prior assault, gave Whitman sufficient reason to believe he was in imminent

danger.  *Id.*  The fact that Eadie's body was moved, he argues, is supported by the location of the bullet holes in the hallway wall and Eadie's wounds, which indicated that he was in a charging position facing Whitman.  ECF Doc. 1 at 8-9.  Whitman argues that counsel should have obtained a scene reconstruction or ballistics expert to challenge the state's theory or cross-examine the state's witnesses, and counsel's failure showed abandonment of his client at a critical stage of pretrial investigation.  ECF Doc. 1 at 9.

The state responds that Whitman's Ground Three claim is procedurally defaulted because the Ohio Court of Appeals determined that the claim was barred by *res judicata* and Whitman cannot establish cause arising from appellate counsel's failure to raise the issue because such a claim would itself be procedurally defaulted.  ECF Doc. 8 at 57-60.  The state further argues that Whitman's Ground Three claim is more expansive than the one he presented to the state courts, such that this court's review should be limited to the arguments actually raised to the state courts.  ECF Doc. 8 at 59.  The state argues that Whitman cannot establish prejudice – and alternatively that his Ground Three claim is meritless – because the evidence was so strong that there was little for a firearms expert to contribute to the case; and the jury saw the body camera footage, so they could evaluate the issue for themselves.  ECF Doc. 8 at 61-62, 66-67.

In his traverse, Whitman argues that his Ground Three claim is not procedurally defaulted because he raises no new arguments that weren't presented in state court; and the state court improperly invoked *res judicata* to bar consideration of his claim, because his claim relied on outside evidence (an affidavit, a police report, and photographs of the crime scene).  ECF Doc. 25 at 71-80.  He argues that the jury were unable to see the police officers move Eadie's body because the state quickly turned off the video right when the officers

41

began dragging Eadie from where he initially had fallen.  ECF Doc. 25 at 76.  Whitman asserts that when it became apparent at trial that Eadie had been moved and that the state relied heavily on Eadie's location to make its case, he tried to get counsel to address the issue, but counsel ignored him.  Id.  Counsel's conduct in lying and failing to consider consulting or hiring an expert or attempt to challenge the state's forensic evidence, Whitman argues, was so egregious that it amounted to a complete failure to subject the state's case to meaningful adversarial testing, in violation of United States v Cronic, 466 U.S. 648 (1984).[8]  ECF Doc. 25 at 80, 82, 86.

### 1.      Procedural Default

As discussed above, a claim is procedurally defaulted (and barred from federal habeas review) if the state court declined to consider the merits of an issue because the petitioner failed to comply with a state procedural rule.  Williams, 460 F.3d at 806.  A claim is procedurally defaulted in this way if: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court actually enforced the rule; (3) the rule constituted an "adequate and independent state ground;" and (4) the petitioner cannot overcome his procedural default through cause and prejudice.  Coleman v. Mitchell, 268 F.3d 417, 427 (6th Cir. 2001).  It is settled that an Ohio court's application of res judicata constitutes an adequate and independent state ground.  Id. at 428.  But when the state court misapplies the res judicata

---

[8] Whitman additionally contends that: (i) the state post-conviction court erred by not holding an evidentiary hearing; (ii) the state wrongfully withheld evidence; and (iii) presented false evidence to the court.  ECF Doc. 25 at 75, 77, 84-86.  The claims that the trial court lacked an evidentiary hearing and the state presented false evidence are deemed forfeited because they were raised for the first time in Whitman's traverse and will not be addressed further.  Tyler, 416 F.3d at 504.  The issue of whether the state wrongfully withheld evidence is part of Whitman's Grounds Four and Five claims, so they will be addressed in connection with those claims.

rule, the rule is not an adequate and independent state ground.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012).

Whitman's Ground Three claim is procedurally defaulted: the Ohio Court of Appeals applied *res judicata* as an alternative to bar merits review of the claim.  *See Williams*, 460 F.3d at 806.  The doctrine bars consideration of claims that could have raised on direct appeal, including claims of ineffective assistance of counsel.  *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994).  However, the doctrine does not apply to ineffective-assistance-of-counsel claims that rely on evidence outside the trial record and could not have been raised on direct appeal based on the trial record.  *Id.*  Here, *res judicata* applies because Whitman raised a claim of ineffective assistance of counsel that was supported by photos of the crime scene and his own affidavit.  ECF Doc. 8-1 at 237-38, 248-56.  Photographs of the crime scene were already in the trial record, and Whitman cannot rely on his own self-serving affidavit to overcome *res judicata*.  *Combs*, 652 N.E.2d at 209-10; ECF Doc. 8-2 at 245-55.  Further, Whitman could have raised the claim on direct appeal because the video depicting the original placement of Eadie's body and the photographs allegedly depicting the new position of Eadie's body were part of the trial record, such that Eadie could have argued that trial counsel was ineffective for not raising an issue regarding the placement of Eadie's body.  *Combs*, 652 N.E.2d at 209; ECF Doc. 8-2 at 156-57, 245-55.  Therefore, the *res judicata* doctrine applied to Whitman's Ground Three claim.

Next, we must determine whether the Ohio Court of Appeals actually enforced the *res judicata* doctrine.  *Coleman*, 268 F.3d at 427.  It did.  The court first conducted a merits analysis of the claims Whitman raised in his post-conviction petition and then found that his claims could have been raised on direct appeal and were, therefore, barred under the doctrine.

ECF Doc. 8-1 at 347-55.  It cannot be disputed that the *res judicata* rule was enforced, albeit as an alternative to the court's primary merits-based review.  *Harris v. Reed*, 489 U.S. 255, 264 (1989) (stating that procedural default applies "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for [its] decision").

Whether the *res judicata* doctrine is an adequate and independent state ground is settled – it is.  *Coleman*, 268 F.3d at 427-28.  Last, Whitman cannot establish cause to overcome his procedural default.  As discussed above, he could have raised his Ground Three claim on direct appeal but didn't.  He could fault his appellate counsel for not raising the claim, but that contention is itself procedurally defaulted and Whitman has made no effort to establish cause or prejudice for his appellate counsel's failure to raise the claim.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *see generally* ECF Doc. 1; ECF Doc. 25.  And failure to establish cause makes it unnecessary to consider prejudice.  *Matthews*, 486 F.3d at 891.  Thus, Whitman's Ground Three claim is procedurally defaulted.  *Coleman*, 268 F.3d at 427.

To briefly address the state's other procedural default argument, with one exception, Whitman's arguments in support of his Ground Three claim are similar enough to those that he raised to the Ohio courts for this court to be satisfied that they are the same.  *Compare* ECF Doc. 1 at 8-9, *with* ECF Doc. 8-1 at 243-44, 248-49, 251-56, 290-92.  The one exception is his claim that counsel abandoned him at a critical juncture of the case, in violation of *Cronic*.  ECF Doc. 8-1 at 9.  A violation of *Cronic* is a related but different claim than a violation of *Strickland*.  *Bell v. Cone*, 535 U.S. 685, 695 (2002).  *Strickland* provides a framework for evaluating individual actions or omissions of counsel, whereas *Cronic* creates a presumption of prejudice in three types of cases: (1) the complete absence of counsel; (2) counsel's failure

44

to subject the prosecution's case to meaningful adversarial testing; and (3) when circumstances make the assistance of counsel "very unlikely." *Bell*, 535 U.S. at 695-96.

Whitman's *Cronic* challenge is procedurally defaulted because he failed to present it to the Ohio courts. *Williams*, 460 F.3d at 806; *Thompson*, 598 F.3d 285. He cannot do so now because he could have raised in his post-conviction petition. Ohio Rev. Code § 2953.21(A)(4) (stating that any ground not raised in a post-conviction motion is waived); Ohio Rev. Code § 2953.23(A)(1) (barring consideration of a successive post-conviction motions unless based on previously unavailable facts and the movant establishes that no reasonable factfinder would have found him guilty absent the constitutional error). And Whitman has made no effort to establish cause for not raising his *Cronic* challenge. *See generally* ECF Doc. 1; ECF Doc. 25.

## 2.    Merits

Although procedurally defaulted, because the state court's procedural ruling was in the alternative to its merits ruling, we can choose to proceed to the merits of Whitman's Ground Three claim. *Hanna v. Ishee*, 694 F.3d 596, 607 (6th Cir. 2012) ("When [the state court's] decision rests upon procedural default as an alternative ground, we may, but are not required to, reach the merits of the claim on habeas review." (quotation marks omitted)).

The Sixth and Fourteenth Amendments guarantee criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To obtain relief on an ineffective-assistance theory, the petitioner has to show that: (1) trial counsel's action or inaction was objectively unreasonable in light of all the circumstances of the case; and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88. The measure of reasonable performance by counsel is competence, not perfection. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). To meet the first *Strickland* prong, the petitioner

45

has to overcome the presumption that trial counsel exercised reasonable professional judgment in light of the circumstances that counsel faced when making all significant decisions. 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). And for "prejudice," the petitioner has to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The already deferential *Strickland* standard becomes even more difficult to meet when combined with the highly deferential AEDPA standard. *Harrington*, 562 U.S. at 105. The question becomes "not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Ohio Court of Appeals' denial of Whitman's Ground Three claim was neither contrary to nor an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Although the Ohio Court of Appeals cited to state law to articulate the standard for evaluating claims of ineffective assistance of counsel, it applied a two-prong deficiency-and-prejudice standard consistent with the *Strickland* analysis. ECF Doc. 8-1 at 350-51 (citing *State v. Bradley*, 538 N.E.2d 373 (1989); *Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court doesn't need to cite the applicable federal decision, but need only apply a rule consistent with that decision). The court also defined prejudice in the same way as *Strickland*. *Compare* ECF Doc. 8-1 at 351 ("a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different" (quotation marks omitted)), *with Strickland*, 466 U.S. at 494 ("a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Applying the substance of the correct standard and definition of prejudice, the Ohio Court of Appeals reasonably determined that Whitman failed to establish prejudice on account of counsel's claimed failure to investigate police misconduct in moving Eadie's body. The state court could reasonably conclude that the jury considered the video and determined that Eadie's location relative to Whitman's did not bear controlling weight in their determination of whether Whitman acted in self-defense. *Harrington*, 562 U.S. at 102-03. Fair-minded jurists could disagree on the correctness of that assessment, given that the issue of Eadie's distance from Whitman was not undisputed. Specifically: (1) the state's forensic expert testified that she could not tell whether Eadie's body was three feet or six feet away from the gun that shot him; (2) Whitman testified that Eadie ducked down and charged into the bedroom, getting within two feet of Whitman; (3) counsel argued at closing that it was perfectly reasonable to think that Eadie was propelled backwards by Whitman's bullets or got back to the hallway before dying; and (4) as the state court observed, the body camera footage Whitman contends showed Eadie's body being moved was played to the jury. ECF Doc. 8-1 at 352; ECF Doc. 8-3 65, 207-08, 283-87. Although Whitman now contends the video was cut short just before the body could be seen moved, that is contrary to what he represented to the state courts. ECF Doc. 8-1 at 249. Moreover, Whitman has not disputed that the video was admitted in evidence or that the jury was able to see the entire video during its deliberations. The state court's conclusion that Whitman was not prejudiced by counsel's failure to do more to establish Eadie's position in the room before Whitman shot him was therefore not so lacking in justification so as to be beyond any possibility for fair-minded disagreement. *Harrington*, 562 U.S. at 103.

As for Whitman's *Cronic* challenge, it too fails on the merits.  Because it was never raised in state court, it is addressed *de novo*.  *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006).  Whitman's *Cronic* challenge fails because counsel did subject the state's case to meaningful adversarial testing by cross-examining witnesses, objecting, calling and examining witnesses, and presenting closing argument.  *See Millender v. Adams*, 376 F.3d 520, 524 (6th Cir. 2004) (holding that counsel's representation did not violate *Cronic* because he actively participated throughout trial when he "cross-examined witnesses, made proper objections, and presented a closing argument").

### 3.    Ground Three Summary

Because the Ohio Court of Appeals determined that Whitman's failure to comply with a state procedural rule precluded consideration of his claim that counsel was ineffective for not investigating alleged police misconduct, I recommend that his Ground Three claim be DISMISSED as procedurally defaulted.  In the alternative, the Ground Three claim can be disposed of on the merits.

### D.    Ground Four: Counsel's Failure to Obtain Nicholas's Statement[9]

In his Ground Four claim, Whitman argues that trial counsel failed to obtain a statement or deposition from Nicholas despite Nicholas having been subpoenaed.  ECF Doc. 1 at 10.  Whitman states that he told counsel that Nicholas was with Eadie just before Eadie came over to Janeann's house on the day of the offense.  *Id.*  Whitman asserts that Nicholas would have been able to provide "invaluable insight" into Eadie's motives for going to Janeann's home and attacking him, as well as Whitman's and Eadie's history of conflict.  *Id.*

---

[9] Although Whitman indicates in his traverse that he has voluntarily withdrawn his Ground Four claim, he makes reference to Nicholas's statement in connection with other claims.  In the interest of completeness and out of an abundance of caution, I will address his Ground Four claim despite his purported withdrawal.

48

He further asserts that, despite being subpoenaed, Nicholas failed to appear at trial, and counsel failed to request a recess to obtain a statement or video deposition of Nicholas. *Id.* He asserts that counsel did not receive a transcript of Nicholas's statement to police and both counsel and the state have refused to provide him with the statement. *Id.* Nicholas's statements, Whitman argues, would have supported his self-defense claim. *Id.*

Warden Gray responds that Whitman's Ground Four claim is procedurally defaulted, reiterating his arguments for why Ground Three was procedurally defaulted. ECF Doc. 8 at 57-60. Warden Gray further argues that Whitman's Ground Four claim is meritless because counsel's decision not to call a witness is a tactical choice that cannot be second guessed. ECF Doc. 8 at 62. Warden Gray asserts that the purpose of Nicholas's testimony was to demonstrate "bad blood" between Eadie and Whitman that was presented from other evidence and not necessarily exculpatory, such that there is no reasonable probability of a different outcome had Nicholas testified. ECF Doc. 8 at 62-63. Warden Gray further contends that the state court reasonably determined that Whitman failed to establish prejudice because evidence of "bad blood" was irrelevant to the elements of self-defense. ECF Doc. 8 at 68-69.

In his traverse, Whitman argues that the state violated *Brady* by withholding Nicholas's statement to police. ECF Doc. 25 at 75. He reiterates that the state improperly invoked the doctrine of *res judicata* to bar adjudicating his Ground Four claim of ineffective assistance of counsel on the merits. ECF Doc. 25 at 80, 86. He further argues that the same arguments he raises now were raised to the state courts. ECF Doc. 25 at 87.

### 1.    Procedural Default

Whitman's Ground Four claim is procedurally defaulted because, first, he failed to fairly present a *Brady* challenge related to Nicholas's interview at each stage in Ohio's review

process. *Thompson*, 598 F.3d at 285.  On the contrary, he maintained that trial counsel had possession of Nicholas's interview with police but failed to interview Nicholas, present Nicholas's interview at trial, or call Nicholas as a witness.  ECF Doc. 8-1 at 243-44, 292-94, 343, 364.  Because Whitman never asserted that the state withheld Nicholas's statement in state court, Whitman's assertion of a *Brady* claim within his Ground Four claim is procedurally defaulted.  *Thompson*, 598 F.3d at 285.  He cannot raise the claim now because he could have raised the issue in his post-conviction petition.  Ohio Rev. Code § 2953.21(A)(4); Ohio Rev. Code § 2953.23(A)(1).  And he has not attempted to establish cause for his failure to raise his *Brady* claim.  *Coleman*, 501 U.S. at 750.

Whitman's Ground Four claim is also procedurally defaulted because, as with his Ground Three claim, the Ohio Court of Appeals found the claim to be barred by *res judicata*. *Williams*, 460 F.3d at 806.  The procedural default analysis above in connection with Whitman's Ground Three claim applies equally to Whitman's Ground Four claim, so it need not be repeated in full.  Suffice it to say, the doctrine of *res judicata* applied because, although Officer Jones's police report was not presented at trial, Whitman knew from pretrial discovery that Nicholas had been interviewed, had told trial counsel that Nicholas would be an important witness, and knew since his trial of counsel's failure to call Nicholas to testify or present Nicholas's statement at trial.  *Combs*, 652 N.E.2d at 209; ECF Doc. 8-1 at 249, 261.  Thus, he could have raised the issue in the trial court; his failure to do so barred the claim on *res judicata* grounds in the Ohio Court of Appeals.

### 2.    Merits

Even though Whitman's Ground Four claim is procedurally defaulted, we may consider the claim on the merits.  *Hanna*, 694 F.3d at 607.  The Ohio Court of Appeals' denial

of Whitman's Ground Four claim was neither contrary to nor an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). As with Whitman's Ground Three claim, the Ohio Court of Appeals applied a two-prong deficiency-and-prejudice standard consistent with *Strickland* and defined prejudice in the same way as *Strickland*. And applying that standard, the Ohio Court of Appeals reasonably determined that Whitman failed to establish deficient performance or prejudice on account of counsel's failure to present Nicholas's statements at trial. ECF Doc. 8-1 at 351-52.

The Ohio Court of Appeals stated that it was possible that Nicholas's proposed statements would have been inculpatory rather than exculpatory; deference was owed to counsel's strategic choices; and Whitman testified to and raised the issue of "bad blood" between him and Eadie, such that he was able to advance his theory of self-defense. ECF Doc. 8-1 at 353. Fair-minded jurists could disagree on the correctness of the state court's determination that counsel did not perform deficiently. *Harrington*, 562 U.S. at 102-03. Counsel reasonably could have determined that presenting Nicholas's statement or calling Nicholas to testify would have worked against Whitman's claim that he acted in self-defense, given the police report's statement that Nicholas did not appear surprised that Whitman killed Eadie. ECF Doc. 8-1 at 258. Had Nicholas testified to a lengthy history of animosity between Whitman and Eadie, counsel could reasonably have been concerned that the jury might conclude that Whitman was at fault in creating the situation that led to the use of force; or that Whitman did not act out of a belief that he was in danger of harm from Eadie, but out of spite; or that deadly force was not necessary. *Lewis*, 976 N.E.2d at 261. Because there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard, fair-minded jurists could agree with the state court's determination that counsel did not perform deficiently

in not presenting Nicholas's statement (in light of Nicholas's non-appearance) or in taking steps to force Nicholas to testify.  *Harrington*, 562 U.S. at 102, 105.

Fair-minded jurists could also agree with the Ohio Court of Appeals' determination that Whitman failed to establish prejudice because the jury already had before it evidence that Eadie came to Janeann's house with the intent to harm, that Eadie and Whitman had a history of disagreement and altercations, and that Eadie had shot up Janeann's house a month earlier. What was that evidence?  Specifically: (1) Janeann's testimony that after she called Eadie, Eadie came in unannounced and slammed Whitman against the wall, screaming at him and headbutting him; (2) Janeann's testimony that Eadie refused to stop and after falling on the ground proceeded to place his hand on Eadie's throat; (3) Janeann's testimony that Whitman was unable to move or say anything while being pinned on the floor; (4) Janeann's testimony that after the altercation ended Eadie refused to speak to Whitman; (5) Janeann's testimony that Eadie returned to Whitman's room over her pleas and that she did not want him to go up there because he "just keep beating on" Whitman; (6) Janeann's testimony that after the shooting Whitman said Edie had tried to come after him again; (7) Whitman's testimony that Nicholas called Janeann to say that Eadie had shot up the floor of Janeann's house; (8) Whitman's testimony that Eadie was the aggressor during the physical altercation and had threatened to throw him out the window before walking up the stairs; and (9) Whitman's testimony that he had a previous altercation with Eadie .  ECF Doc. 8-3 at 81-82, 84-89, 92-94, 117, 141, 147-53, 156-57, 161-62, 167-68, 207-11, 218-19.

The only thing that Nicholas's testimony would have added was evidence that Janeann and Eadie had been arguing, which was not relevant to Eadie's motives in fighting with Whitman or returning back up the stairs after the altercation.  Already presented with

substance of the evidence that Nicholas would have given, the jury nevertheless rejected Whitman's self-defense claim and found him guilty.  Therefore, the state court's conclusion that Whitman failed to establish prejudice on account of counsel's failure present Nicholas's statement or call Nicholas as a witness was not so lacking in justification that it was beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 102-03.

Whitman's *Brady* claim, too, fails on the merits.  In *Brady*, the Supreme Court held that suppression by the government of evidence favorable to a defendant violates due process where the evidence is material to the defendant's guilt or innocence.  373 U.S. at 87. Whitman cannot state a *Brady* claim based on suppression of Nicholas's statements because nothing was withheld.  By his own admission, trial counsel had possession of Nicholas's interview.  ECF Doc. 8-1 at 243.  And the state's pretrial response to Whitman's request for discovery indicated counsel had received Nicholas's interview.  ECF Doc. 8-1 at 259-61.

### 3.    Ground Four Summary

Because the Ohio Court of Appeals determined that Whitman's failure to comply with a state procedural rule precluded consideration of his claim that counsel was ineffective for not presenting Nicholas's statements, I recommend that his Ground Four claim be DISMISSED as procedurally defaulted.  Should the Court prefer to address Whitman's Ground Four claim on the merits, the claim should be dismissed for lack of merit.

### F.    Ground Five: Counsel's Failure to Obtain Phone and Text Records

In his Ground Five claim, Whitman argues that trial counsel failed to obtain phone and text records of calls between Nicholas, Whitman, Janeann, and Eadie that would have established that Eadie was present in Janeann's house with the intent of attacking Whitman. ECF Doc. 1 at 12.  Whitman argues this evidence could have established that Eadie was not

present in the house lawfully and, as a result, Whitman had no duty to retreat under the Castle Doctrine. *Id.* Whitman asserts that trial counsel had requested the records in a pretrial motion for discovery, but the state never turned over the records, in violation of *Brady*. *Id.*

Warden Gray responds that Whitman's Ground Five claim is procedurally defaulted, reiterating his arguments for why Whitman's Ground Three claim was procedurally defaulted. ECF Doc. 8 at 57-60. Warden Gray further argues that Whitman's Ground Five claim is meritless because the phone and text records would not have been relevant to whether Whitman was at fault in creating the situation that resulted in Eadie's death or that he had a *bona fide* belief that he was in imminent danger of bodily harm, and the state court's rejection of the claim was not unreasonable ECF Doc. 8 at 63, 70-71.

In his traverse, Whitman argues that his Ground Five claim is not procedurally defaulted because he presented it in state court, incorporating by reference the arguments he raised regarding his Ground Three claim. ECF Doc. 25 at 87. This includes his argument that the *res judicata* bar was improperly applied because he supported his state post-conviction motion with his affidavit and his claim relied on wrongfully withheld evidence. ECF Doc. 25 at 74-75. Whitman asserts that counsel specifically moved for discovery of Janeann's cell phone data – including call logs and text messages – to obtain texts between Janeann and Eadie and received from the state a thumb drive that was supposed to contain the relevant phone data. ECF Doc. 25 at 88. But the data was inaccessible, and counsel's failure to further press the state for the data in order to investigate what Janeann and Eadie were communicating, the time their communications took place, and Eadie's location at the time they took place fell below *Strickland*'s standard of objective reasonableness and resulted in an ongoing *Brady* violation. ECF Doc. 25 at 88, 90-91. The withheld evidence, he argues,

54

would have confirmed his assertions that it was the stress caused by the toxic relationship between Janeann and Eadie that led to Eadie's attack on Whitman and that Whitman's use of alcohol was overemphasized.  ECF Doc. 25 at 90.

### 4.    Procedural Default

As discussed above, a claim is procedurally defaulted if the state court declined to consider the merits of an issue because the petitioner failed to comply with a state procedural rule or the petitioner failed to fairly present the claim to the state courts while the state court remedies were still available.  *Williams*, 460 F.3d at 806.

Whitman's Ground Five claim is procedurally defaulted because, first, he failed to fairly present his *Brady* challenge at each stage in Ohio's review process.  *Thompson*, 598 F.3d at 285.  Specifically, he raised it for the first time in his appeal to the Ohio Supreme Court from the denial of his state post-conviction petition.  ECF Doc. 8-1 at 366.  Presenting a new claim for the first time to a state's highest court on discretionary review does not constitute fair presentation at every court level.  *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Although he had mentioned in his post-conviction petition that the thumb drive with the phone and text records was blank and in his reply brief in the Ohio Court of Appeals that the state not been "forthcoming with discovery;" without an associated constitutional claim, that was insufficient to properly raise a *Brady* claim.  *See Williams*, 460 F.3d at 806; ECF Doc. 8-1 at 245, 249, 344.  Whitman cannot raise the claim now because he could have raised the issue in his post-conviction petition.  Ohio Rev. Code § 2953.21(A)(4); Ohio Rev. Code § 2953.23(A)(1).  And he has not attempted to establish cause for his failure to raise his *Brady* claim.  *Coleman*, 501 U.S. at 750.

Whitman's Ground Five claim is also procedurally defaulted because, as with his Ground Three and Four claims, the Ohio Court of Appeals' application of the *res judicata* bar was an adequate and independent state procedural rule that bars review of the claim. *Williams*, 460 F.3d at 806.  The procedural-default analysis above in connection with Whitman's Ground Three and Four claims applies equally to Whitman's Ground Five claim, so it need not be repeated in full.  Suffice it to say, *res judicata* applied because Whitman could have raised the claim on direct appeal, because he knew about the missing phone records before trial based on a series of pretrial discovery orders.  *Combs*, 652 N.E.2d at 209; ECF Doc. 8-1 at 249, 261-64.  Whitman also has not established cause for his failure to fully raise the claim in the state courts.  *Coleman*, 268 F.3d at 427-28.  He could have raised an ineffective assistance of counsel as cause for his failure to raise claim on direct appeal, but that contention would itself be procedurally defaulted and Whitman has made no effort to establish cause or prejudice for his appellate counsel's failure to raise the claim.  *Edwards*, 529 U.S. at 451.  Thus, Whitman's Ground Five claim is procedurally defaulted.

**5.    Merits**

Even though Whitman's Ground Five claim is procedurally defaulted, the Court may nevertheless choose to address the claim on the merits.  *Hanna*, 694 F.3d at 607.  The Ohio Court of Appeals' denial of Whitman's Ground Five claim was neither contrary to nor an unreasonable application of *Strickland*.  28 U.S.C.  2254(d).  As with Whitman's Ground Three and Four claims, the court applied a two-prong deficiency-and-prejudice standard consistent with *Strickland* and defined prejudice in the same way as *Strickland*.  And applying that standard and definition of prejudice, the Ohio Court of Appeals reasonably determined that Whitman failed to establish prejudice resulting from counsel's failure to investigate

Janeann's phone records.  The state court could reasonably conclude that the jury would probably infer from Janeann's testimony that Eadie's intent upon arriving to her house was to harm Whitman, such that there was no reasonable likelihood that the phone records would have changed the outcome.  Fair-minded jurists could disagree on the correctness of that determination, given Janeann's testimony about her communications with Eadie and her testimony that shortly after Eadie arrived, he pinned Whitman against the wall, beat him, screamed at him, and later had his hands around Whitman's throat while Whitman was unarmed and immobile.  ECF Doc. 8-1 at 76-77, 80-81, 144, 354; ECF Doc. 8-3 at 83-88. The state court's conclusion that Whitman was not prejudiced by counsel's failure to investigate the phone and text records was not so lacking in justification that it was beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 102-03.

Whitman's *Brady* claim, too, fails on the merits.  To establish a *Brady* violation, a petitioner must show that: (1) the suppressed evidence was exculpatory or impeaching; (2) the state suppressed the evidence; and (3) the suppression of the evidence prejudiced him. *England v. Hart*, 970 F.3d 698, 716 (6th Cir. 2020).  "Prejudice (and materiality) is established by showing that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *England*, 970 F.3d at 717 (quotation marks omitted).  The petitioner must show that a substantial likelihood of a different result such that it undermines confidence in the proceeding, not just a "conceivable" possibility of a different result.  *Id.*

Whitman has failed to establish that the allegedly suppressed evidence was exculpatory or impeaching because he has not explained what the substances of the communications between Janeann and Eadie were.  *Id.*  He also failed to establish prejudice.  Whitman's

argument seems to be that the phone records could have established that he did not cause the situation that preceded his use of deadly force.  ECF Doc. 25 at 90.  That would have been relevant to the first element of his self-defense claim – that he was not at fault in creating the situation giving rise to the use of force.  *Lewis*, 976 N.E.2d at 261.  While relevant on that issue, the evidence would have fallen short of establishing a reasonable possibility of acquittal.  Eadie attempted to lure Whitman down the stairs from his room; but Whitman refused, choosing to remain in his room – from which he could not retreat.  ECF Doc. 8-1 at 144-45; ECF Doc. 8-3 at 90, 157.  And the threat Whitman attributed to Eadie was conditioned upon Whitman returning Janeann's gun, which Whitman also refused.  ECF Doc. 8-3 at 156-57.  The evidence of Eadie's intent also did not bear upon whether Whitman's only means of avoiding Eadie's threat was to use deadly force.  Because the evidence was undisputed that Eadie was unarmed and had only reached the doorway – six feet from where Whitman sat with his gun – when Whitman shot him, the allegedly missing evidence can hardly said to have prejudiced Whitman's defense.  ECF Doc. 8-2 at 207, 229, 232.  Thus, should the Court to address Whitman's Ground Five claim on the merits, it should be denied for lack of merit.

### 6.     Ground Five Summary

Because the Ohio Court of Appeals determined that Whitman's failure to comply with a state procedural rule precluded consideration of his claim that counsel was ineffective for not investigate the phone and text records, I recommend that his Ground Five claim be DISMISSED as procedurally defaulted.  In the alternative, the Ground Five claim can be disposed of for lack of merit.

### E.   Ground Six, Seven, and Eight: Ineffective Assistance of Appellate Counsel[10]

In Grounds Six, Seven, and Eight, Whitman asserts overlapping claims of ineffective assistance of appellate counsel.  ECF Doc. 1 at 13-17.  Whitman claims that his appellate counsel failed to present claims of ineffective assistance of trial counsel based on trial counsel's failure to request a lesser-included-offense instruction or challenge the sufficiency of the evidence of possession of a firearm while under disability.  ECF Doc. 1 at 13, 15.  In passing, Whitman asserts that appellate counsel: (1) did not show up for oral argument; (2) was a magistrate in the probate court at the time of the appeal, which created a conflict of interest between counsel's aspirations to become a judge in state court and his duties to Whitman; and (3) refused to communicate with Whitman or file briefs in a timely manner, leading to issues being omitted from the brief, including "issues with prosecutorial misconduct concerning the States outrageously erroneous and fictional statements of case and facts and did not put forth the strongest argument available for the most important claim of denial of the Castle Doctrine instructions."  ECF Doc. 1 at 14-15, 17.  Appellate counsel's failures, Whitman argues, constituted abandonment at a critical stage of the appeals process. *Id.*

Warden Gray responds that Whitman's Ground Six, Seven, and Eight claims were procedurally defaulted in part because Whitman only faulted appellate counsel in state court for not challenging trial counsel's failure to request voluntary-manslaughter instruction or the sufficiency of the evidence to sustain his weapons-under-a-disability charge.  ECF Doc. 8 at 72-74.  Warden Gray argues that Whitman cannot now submit his new claims in state court

---

[10] Although Whitman indicates that he has voluntarily withdrawn his Ground Seven and Eight claims, they are identical to his Ground Six claim.  So they will be addressed notwithstanding Whitman's withdrawal.

and cannot establish cause and prejudice to overcome his default.  ECF Doc. 8 at 74, 77-79.

Warden Gray contends that the claims actually raised were meritless because the Ohio Court

of Appeals' determination that no voluntary manslaughter instruction was warranted is an

issue of state law to which deference is owed and the court reasonably determined that there

was sufficient evidence to sustain his conviction.  ECF Doc. 8 at 75-76.  Warden Gray further

argues that Whitman's new arguments are meritless because appellate counsel did challenge

the lack of Castle Doctrine instructions, and Whitman's contention that there was

prosecutorial misconduct is unsubstantiated.  ECF Doc. 8 at 78-79.

In his traverse, Whitman argues that he told appellate counsel that lesser-included

instructions on voluntary manslaughter were warranted because the evidence showed that he

was under extreme stress and emotional distress leading up to and at the time he shot Eadie.

ECF Doc. 25 at 91-92.  But appellate counsel refused to communicate with Whitman or

answer calls with his family.  ECF Doc. 25 at 92.  He argues that he also told counsel there

was insufficient evidence to support his conviction for weapons under disability because there

was no evidence that he was under disability for being a chronic alcoholic.  ECF Doc. 25 at

93-95, 99.  Specifically, there was no expert testimony relating to the diagnosis and treatment

of alcoholics or that Whitman met the definition of being an alcoholic.  ECF Doc. 25 at 96-97.

But counsel did not raise the claim.  ECF Doc. 25 at 100.  Whitman contends that counsel's

failures were likely the result of the conflict of interest arising from counsel's role as a probate

court judge.  ECF Doc. 25 at 101.  He argues that counsel also failed to address the

prosecutor's misconduct in claiming that he shot Eadie like a deer, which was a misstatement

of fact.[11]  ECF Doc. 25 at 101-02.  He also asserts that counsel abandoned him by not showing up to oral argument, refusing to communicate with him, and failing to raise his desired claims. ECF Doc. 25 at 103-04, 108.  Last, Whitman cites and quotes various portions of *Martinez v. Ryan*, 566 U.S. 1 (2012).  ECF Doc. 25 at 104-08.

### 1.    Procedural Default

Whitman's arguments in his Ground Six, Seven, and Eight claims – that his appellate counsel failed to appear at oral argument, had a conflict of interest, refused to communicate with his client, and failed to raise claims of prosecutorial misconduct or sufficiently argue whether Castle Doctrine instructions were warranted – are procedurally defaulted because he failed to fairly present them at each stage of Ohio's review process.  *Thompson*, 598 F.3d at 285.  Whitman did not raise these arguments in his Ohio App. R. 26(B) application to reopen or in his memorandum in support of jurisdiction to the Ohio Supreme Court from the denial of that application.  ECF Doc. 8-1 at 396-426, 437-41, 452-71.  Nor did Whitman raise these arguments in his subsequent post-conviction proceedings.  ECF Doc. 8-1 at 487-505, 522-31, 536-53, 573-83, 600-33.  An independent review of the docket of Whitman's direct appeal shows that he moved to replace appellate counsel and "restrict" counsel, submitted letters to the Ohio Court of Appeals, and requested legal instructions but the court was unable to access those documents to verify their contents.  Docket for Ohio App. Ct., 7th Dist. Case No. 2017CA79.  Even assuming the arguments Whitman raises in his Ground Six, Seven, and

---

[11] Whitman also contends that there were no jury instructions on which the jury could evaluate the elements to his weapons-while-under-disability offense and Ohio Court of Appeals erred by not ruling on his request to replace appellate counsel, denying his motion to "restrict" counsel, and refusing to address the sufficiency of the evidence on his weapons-while-under-disability conviction on direct appeal.  ECF Doc. 25 at 95, 100, 103.  These claims having been raised for the first time in his traverse, they are deemed forfeited and will receive no further consideration.  *Tyler*, 416 F.3d at 504.

Eight claims were raised to the Ohio Court of Appeals on direct review, he did not further raise them to the Ohio Supreme Court.  ECF Doc. 8-1 at 174-218.

To the extent Whitman did not raise his new arguments in support of his Ground Six, Seven, and Eight claims at all, he cannot do so now because the claims would be barred by *res judicata*: he could have raised them in prior state court proceedings.  *State v. Twyford*, 106 Ohio St.3d 176, 176-77 (Ohio 2005) (holding that there is no right to a successive Ohio App. R 26(B) motion and that *res judicata* bars re-litigation of claims of ineffective assistance of appellate counsel).  Even assuming that Whitman raised his new arguments in his Ohio Court of Appeals filings on direct review, they are procedurally defaulted because he failed to raise the claims in his appeal to the Ohio Supreme Court.  *Thompson*, 598 F.3d 285.  Whitman's new arguments in support of his Ground Six, Seven, and Eight claims are therefore procedurally defaulted.  *Thompson*, 598 F.3d at 285.

Whitman has not attempted to establish cause to excuse his procedural default.  And to the extent that he relies on *Martinez* to do so, he has not succeeded.  In *Martinez*, the Supreme Court held that when state law only allows ineffective-assistance-of-trial-counsel claims to be raised on collateral review, a prisoner may establish "cause" to overcome for a default of an ineffective-assistance-of-trial-counsel claim if: (1) the petitioner proceeded *pro se* in the collateral proceeding in which he should have raised the claim; or (2) the petitioner was counseled, but counsel was ineffective.  566 U.S. at 14.  In either case, the petitioner must also demonstrate that his claim has "some merit."  *Id.*  Whitman cannot rely on *Martinez* because the Supreme Court has declined to extend *Martinez* to procedurally defaulted claims of ineffective assistance of *appellate* counsel.  *Davila v. Davis*, 137 S. Ct. 2058, 2063, 2065 (2017).

2.      **Merits**

The Ohio Court of Appeals' denial of Whitman's Ground Six, Seven, and Eight claims was neither contrary to nor an unreasonable application of *Strickland*.  28 U.S.C. § 2254(d). The court explicitly cited and applied the two-prong deficiency and prejudice *Strickland* standard.  ECF Doc. 8-1 at 443-44.  And the court reasonably concluded that Whitman did not meet that standard with regard to his contention that appellate counsel should have argued that trial counsel was ineffective for not requesting a lesser-included-offense instruction on voluntary manslaughter.  The Ohio court of Appeals determined that the evidence did not give rise to an issue of voluntary manslaughter because there was no evidence that he acted out of sudden passion or rage, but rather, fear; and a voluntary manslaughter instruction would have been erroneous because it would be inconsistent with a theory of self-defense.  ECF Doc. 8-1 at 445-46.  The Ohio Court of Appeals' first reason was consistent with Ohio law.  A manslaughter instruction is warranted,

> if the evidence, when construed most favorably to the defendant, would allow the jury to reasonably find that the defendant established by a preponderance of the evidence, that he acted under the influence of sudden passion or in a fit of rage brought on by serious provocation by the victim that is reasonably sufficient to incite the use of deadly force.

*State v. Harris*, 718 N.E.2d 488, 492 (Ohio Ct. App. 1998).  And Ohio courts have distinguished between the evidence that may support a theory of self-defense (fear of harm) and evidence that supports a voluntary-manslaughter instruction (rage).  *Id.*  Fair-minded jurists could agree with the Ohio Court of Appeals' conclusion that there was insufficient evidence to warrant an instruction on voluntary manslaughter, given: (1) Sergeant Scott Prince's testimony that Whitman told police he shot Eadie because he was not going to "take another beating" or possibly getting shot by Eadie; (2) Janeann's testimony that after the

63

physical altercation between Eadie and Whitman (minutes before the shooting) Whitman had sat on the bed and asked Eadie if they could "talk about it"; (3) Janeann's testimony that Whitman shot Eadie because Eadie was "coming after [Whitman] again;" and (4) Whitman's testimony that he shot Eadie because he felt that Eadie would have beat him again. ECF Doc. 8-2 at 200, 219; ECF Doc. 8-3 at 89, 94, 115-16, 156-57, 161, 167-68, 205-06, 223-24. And there was no evidence that Whitman was in a rage or sudden fit of passion at the time of the shooting. *See generally* ECF Doc. 8-2; ECF Doc. 8-3.

As for the Ohio Court of Appeals' determination that an instruction on voluntary manslaughter would have been erroneous, that is an interpretation of state law to which deference is owed. *Estelle*, 502 U.S. at 67-68. Moreover, the Ohio Court of Appeals' ruling to that effect was consistent with its own precedent. *State v. Jefferson*, 971 N.E.2d 469, 473 (Ohio Ct. App. 2012) ("We have previously held that an instruction on voluntary manslaughter and self-defense is erroneous because the two legal theories are incompatible."). Given these issues, we must defer to the Ohio Court of Appeals' conclusion that Whitman could not show his appellate counsel's performance was deficient or met the first prong of the *Strickland* test.

The Ohio Court of Appeals likewise reasonably determined that Whitman failed to establish prejudice on account of appellate counsel's failure to contest the sufficiency of the evidence to support his conviction for having weapons while under disability. ECF Doc. 8-1 at 447-48. Under Ohio law, it is unlawful for a person to knowingly have, carry, or use a firearm if, among other things, he is "drug dependent, in danger of drug dependence, or a chronic alcoholic." Ohio Rev. Code 2923.13(A)(4). Due to difficulty in defining "chronic alcoholic" in a precise enough way to encompass all alcoholics, the question of whether the

defendant qualifies as a chronic alcoholic is for the jury.  *State v. Tomlin*, 63 Ohio St.3d 724, 727 (1992).  Generally, "[w]hat makes a person an alcoholic is his inability to control his drinking."  *Doyle v. Ohio Bureau of Motor Vehicles*, 51 Ohio St.3d 46, 49 (Ohio 1990).

Fair-minded jurists could agree with the Ohio Court of Appeals' decision that there was sufficient evidence to sustain Whitman's conviction on his charge of having weapons under disability, such that he suffered no prejudice on account of appellate counsel's failure to raise the issue.  This is especially so, given: (1) Officer Brian Dougherty's testimony that Whitman admitted to having been drinking the day of the offense, appeared under the influence of alcohol, and smelled of alcohol; (2) Sergeant Prince's testimony that Whitman could not be interviewed for six hours so he could "sober up;" (3) Kendra Brabazon's testimony that Whitman was "mostly drunk" when she saw him and intoxicated in the morning and early afternoon of the offense; (4) Janeann's testimony that Whitman had been drinking in the days leading up to the offense, had a drinking problem, drank a lot, and drank all the time; and (5) Whitman's testimony that he normally drank a six-pack of beer or three to four mixed drinks and drank a "significant amount of alcohol" the day of the offense.  ECF Doc. 8-2 at 175-76, 197-98; ECF Doc. 8-3 at 13-14, 18-19, 28, 34, 98-100, 140-41.  Thus, the state court's denial of Whitman's Ground Six, Seven, and Eight claims was not so lacking in justification beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 102-03.

Whitman's new arguments in support of his Ground Six, Seven, and Eight are also meritless.  *See Lambrix*, 520 U.S. at 525.  Whitman had a Sixth Amendment right to conflict-free counsel.  *Woods v. Georgia*, 450 U.S. 261, 272 (1981).  To establish a violation of that right, there must be an "actual conflict of interest [that] adversely affected his lawyer's

performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Whitman's contention that appellate counsel suffered from a conflict of interest fails because nothing in the record supports his contention that his appellate counsel worked as a probate court magistrate with aspirations to obtain a state judgeship. *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987 (requiring that a prisoner claiming a conflict of interest point to "specific instances in the record to suggest an actual conflict or impairment of interests" (quotation marks omitted)). Consequently, his contention that counsel was operating under a conflict of interest is purely hypothetical and, therefore, insufficient. *Harbison v. Bell*, 408 F.3d 823, 836 (6th Cir. 2005) ("A possibility of conflict is insufficient to establish a violation of Harbison's Sixth Amendment rights, and no violation occurs where the conflict is irrelevant or merely hypothetical.").

Whitman's contention that the prosecution misstated the evidence is contradicted by the record. The state never said at trial that Whitman shot Eadie like a deer. *See generally* ECF Doc. 8-2; ECF Doc. 8-3. Rather, Sergeant Prince testified that Whitman told police "I couldn't have shot a deer better when I was trying to kill him or something to that effect. I couldn't have made a clean shot on a deer that I was trying to kill." ECF Doc. 8-2 at 198-99. During closing argument, the state described that testimony as "[Whitman] told Sergeant Prince that he's never done such a clean shot on a deer." ECF Doc. 8-3 at 293. Because the prosecution's remarks were consistent with Sergeant Prince's testimony, Whitman has failed to establish prejudice on account of appellate counsel's failure to raise such a claim on direct appeal. *State v. Barker*, 75 N.E.3d 738, 749 (Ohio Ct. App. 2016) ("During closing argument, a prosecutor may comment freely on what the evidence has shown and what reasonable inferences may be drawn therefrom." (quotation marks omitted)).

66

Next is Whitman's contention that appellate counsel was ineffective for not arguing more strongly that the trial court erred by refusing to instruct the jury on the Castle Doctrine. This argument fails because Whitman has contended that appellate counsel was ineffective, without explaining what more counsel should have done on direct appeal.  *See generally* ECF Doc. 1; ECF Doc. 25.  Without more, Whitman's conclusory argument fails to overcome *Strickland*'s presumption of reasonable performance.  *Wogenstahl*, 668 F.3d at 335-36 ("[G]eneral claims of [ineffective assistance of trial counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant *habeas* relief." (emphasis in original)).

Last are Whitman's arguments that appellate counsel failed to appear at oral argument and refused to communicate with him.  Taken in conjunction with his allegation that appellate counsel abandoned him, it appears Whitman asserts a violation of *Cronic*.  However, oral argument is not a "critical stage" of trial for which counsel's absence triggers a presumption of prejudice under *Cronic*.  *Hernandez v. Sec'y, Fla. Dep't of Corr.*, 408 F. App'x 316, 318 (11th Cir. 2011) (holding that oral argument on direct appeal is not a critical stage of trial under *Cronic*); *Sims v. United States*, 103 F.3d 133 (Table), 1996 U.S. App. LEXIS 30845 at *5, 11-12 (7th Cir. Nov. 22, 1996) (concluding that appellate counsel's omissions, including failing to appear at oral argument, did not amount to a complete absence of counsel under *Cronic*); *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (same as *Hernandez*). *Cronic* also does not apply to claims that counsel failed to communicate with his client.  *E.g.*, *Young v. Westbrooks*, 702 F. App'x 255, 263 (6th Cir. 2017) (holding that post-conviction appellate counsel's complete lack of communication did not arise to a complete abandonment of the petitioner); *Rickman v. Bell*, 131 F.3d 1150, 1156 (6th Cir. 1997) (stating counsel's

failure to communicate with his client, while deficient performance, was "not so inept as to give rise to a presumption of prejudice"); *see also Fautenberry v. Mitchell*, 515 F.3d 614, 623-24 (6th Cir. 2008) (applying *Strickland* to a claim that trial counsel failed to communicate meaningfully with his client); *Wyley v. United States*, 107 F.3d 12, 1997 U.S. App. LEXIS 2093 at *3-6 (6th Cir. Feb. 3, 1997) (same).  Counsel's failure to raise certain issues on appeal likewise does not state a claim under *Cronic* because it refers to a specific claim of ineffective assistance, rather than the complete absence of representation.  *See Bell*, 535 U.S. at 695-96

Whitman's challenges to appellate counsel's failure to appear at oral argument and communicate with him also fail under *Strickland* because he has failed to establish prejudice. 466 U.S. at 694.  Whitman asserts that that counsel's omission resulted in counsel not arguing that trial counsel failed to request a voluntary-manslaughter instruction, there was insufficient evidence to sustain his having-weapons-under-disability conviction, and prosecutorial misconduct by the state's assertion that she shot Eadie like a deer.  ECF Doc. 25 at 91-102. But as discussed above, the state court reasonably determined that a voluntary-manslaughter instruction was not warranted and there was sufficient evidence to support his conviction for having weapons under disability, and his prosecutorial misconduct claim was meritless.  Thus, Whitman has failed to establish a reasonable likelihood of a different outcome on direct appeal, had appellate counsel raised his desired issues.  *Strickland*, 466 U.S. at 694.

### 3.     Grounds Six, Seven, and Eight Summary

Because several of Whitman's new arguments in support of his Grounds Six, Seven, and Eight claims were not fairly presented to the Ohio courts, I recommend that these claims be DISMISSED in part as procedurally defaulted.  And because Whitman has not shown that

the Ohio Court of appeals unreasonably determined that he failed to meet the requirements of *Strickland*, I recommend that these grounds be DENIED as meritless.

F.     **Ground Nine: Retroactive Effect of Changes to Ohio Rev. Code § 2901.05**

In his Ground Nine claim, Whitman argues that he is entitled to retroactive application to recent changes to Ohio Rev. Code § 2901.05.  ECF Doc. 1 at 18.  He asserts that in December 2018, the Ohio General Assembly amended Ohio Rev. Code § 2901.05, to eliminate the burden on the defendant to establish the elements of self-defense and shift to the state the burden to prove beyond a reasonable doubt that the defendant was *not* acting in self-defense.  *Id.*  Whitman argues that the change was a change to "a substantive rule of constitutional law" that brought Ohio in line with federal standards requiring the government to disprove self-defense.  *Id.*  He contends that the issue of retroactivity would fall under the exceptions of *Teague v. Lane*, 489 U.S. 288 (1989), and that he raised this issue in an untimely post-conviction motion, citing *Isaac v. Engle*, 646 F.2d 1122 (6th Cir. 1980) *reh'g granted*, 464 F.2d 1129, *rev'd sub nom. Engle v. Isaac*, 456 U.S. 107 (1982), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016).  ECF Doc. 1 at 18-19.

Warden Gray responds that Whitman's Ground Nine claim is not cognizable on federal habeas review because retroactivity of state criminal statutes is an issue of state law upon which the Ohio courts have spoken, determining that the changes to Ohio Rev. Code § 2901.05 do not apply retroactively.  ECF Doc. 8 at 79-80.

In his traverse, Whitman argues that the changes to Ohio Rev. Code § 2901.05 apply to him because the changes were enacted on March 28, 2019, and his conviction was not final until August 2019 because he still had pending post-conviction motions for relief.  ECF Doc. 25 at 108-09, 121-23, 127, 137.  He argues that he can establish cause for not challenging the

69

jury instructions as being unconstitutional in light of the changes because there was an intervening change in the law.  ECF Doc. 25 at 111.  And he argues that prejudice "is obvious" because of the shifting burdens on self-defense.  *Id.*  Whitman argues that *Montgomery* made clear that *Teague* applied to state post-conviction courts.  ECF Doc. 25 at 112-15.  He argues that the amendments to Ohio Rev. Code § 2901.05 made two substantive changes – shifting the burden to the state to disprove self-defense and made the absence of self-defense an element of the offence – such that it announced a "new rule" under *Teague*.  ECF Doc. 25 at 115-16, 135-36.  Whitman argues that the state court therefore unreasonably ignored his claims and refused to apply clearly established Supreme Court precedent to evaluate the retroactivity of the changes when it concluded that the changes did not apply retroactively.  ECF Doc. 25 at 116-19, 129-33, 141-48.  He also argues that his sentence and conviction were rendered void by the changes to the statute, making his continued detention a violation of his due process rights.  ECF Doc. 25 at 119-22, 128-29.

### 1.    Cognizability

I agree with Warden Gray's argument that Whitman's Ground Nine claim is not cognizable on federal habeas review.  Federal habeas relief is available to a prisoner who is in custody in violation of "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "Federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 765 (1990); *accord Estelle*, 502 U.S. at 67.  And "retroactivity of a state statute is a matter of state law."  *Messenger v. McQuiggin*, No. 2:09-cv-13860, 2010 U.S. Dist. LEXIS 69871 at *21 (E.D. Mich. June 15, 2010).  The Ohio Court of Appeals' ruling that the changes in Ohio Rev. Code § 2901.05 are not retroactive, thus, does not raise a federal constitutional claim cognizable on habeas review.  *Messenger*, No. 2:09-cv-13860, 2010 U.S.

Dist. LEXIS 69871 at *14 ("Thus, the Michigan Court of Appeals determination that the Self Defense Act does not apply retroactively to pre-Act conduct does not raise a federal constitutional claim cognizable on habeas review."); ECF Doc. 8-1 at 586-88.

Whitman's arguments grounded in Supreme Court and circuit precedent are unavailing.  In *Griffith*, the Supreme Court held that new rules are retroactively applicable to cases on direct review – whether in state or federal court.  479 U.S. 314, 316, 328 (1987). However, *Griffith* concerned "new constitutional rules" announced in Supreme Court cases. *Id.* at 322.  In *Teague*, the Court created a framework for determining retroactivity on federal habeas review.  *Montgomery*, 577 U.S. at 198.  Retroactivity of what?  Retroactivity of "new constitutional rules of criminal procedure" announced in a Supreme Court decision.  *Teague*, 489 U.S. at 300-10.  In *Montgomery*, the Court expanded the application of *Teague* to cases on state collateral review.  577 U.S. at 200.  But again, application as to what?  Cases announcing "a new substantive rule of constitutional law."  *Id.*  None of these decisions concern the retroactive application of state statutes.  And Whitman has not pointed to any Supreme Court case requiring states to give retroactive effect to state statutes or apply Supreme Court precedent on retroactivity to the determination of whether to give retroactive effect to a change in a state statute.  *See generally* ECF Doc. 25 at 108-49.  The issue of the retroactivity of Ohio's changes to a state statute is rather one purely and entirely one of state law.  *Hyle v. Porter*, 117 Ohio St.3d 165, 166-67 (2008) (stating that there are two restrictions on the retroactive application of Ohio statutes – Ohio Rev. Code § 1.48's presumption that statutes apply prospectively unless expressly made retroactive and the Ohio Constitution's bar against retroactive laws); *see also Great N. Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S.

71

358, 364 (1932) (stating that the Constitution "has no voice upon the subject [of whether the Constitution requires a state court to make its rulings retroactive]").

Whitman's contention that his conviction had not become final at the time of the changes to Ohio Rev. Code § 2901.05 is also unavailing.  In effect, he asserts that his conviction was unconstitutional because the state failed to disprove the elements of self-defense beyond a reasonable doubt.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001) ("[T]he Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt.").  But the March 28, 2019 changes to Ohio Rev. Code § 2901.05 did not apply to him because his conviction became final on November 7, 2018, when the Ohio Supreme Court declined to accept jurisdiction over Whitman's direct appeal.  *Agee v. Russel*, 92 Ohio St.3d 540, 543 (Ohio 2001) (citing *Teague*, 489 U.S. at 295); ECF Doc. 8-1 at 234.  And the Supreme Court has rejected the argument that Ohio Rev. Code § 2901.05 necessarily makes disproving self-defense an element of the crime absent evidence of legislative intent to the contrary, instead construing such a claim as a suggestion that the instruction at the prisoners' trials violated state law.  *Engle*, 456 U.S. at 120-21.

### 2.      Ground Nine Summary

Because Whitman's Ground Nine claim challenging the Ohio Court of Appeals' determination that Ohio Rev. Code § 2901.05 was not retroactive is non-cognizable, I recommend that Whitman's Ground Nine claim be DISMISSED on that basis.

### G.      Ground Ten: Cumulative Error

In his Ground Ten claim, Whitman asserts that the cumulative errors of the Ohio courts deprived him of a fair trial, in violation of the Sixth and Fourteenth Amendments.  ECF Doc.

1 at 20.  Specifically, Whitman cites the (1) state courts' refusal to retroactively apply Ohio Rev. Code § 2901.05, which rendered the instructions given on self-defense constitutionally infirm; (2) trial court's refusal to give Castle Doctrine instructions; and (3) trial court's instructions on excessive force, which he argues were not pertinent to the case.  *Id.*

Warden Gray responds that Whitman's Ground Ten claim is not cognizable on federal habeas review because cumulative-error claims are not cognizable in the Sixth Circuit.  ECF Doc. 8 at 81.

In his traverse, Whitman reiterates that retroactive application of Ohio Rev. Code § 2901.05 was constitutionally required.  ECF Doc. 25 at 150.  He argues that requiring him to prove self-defense by a preponderance of the evidence effectively required him to concede his guilt.  ECF Doc. 25 at 150-151.  He argues that the denial of Castle Doctrine instructions allowed the trial court to instruct the jury that self-defense was to be set aside if they determined that the amount of force used was disproportional, in violation of *Martin*.  ECF Doc. 25 at 151-52, 155-56.  Whitman further argues that the jury was never instructed on what constituted disproportionate force or how "great bodily harm" was.  ECF Doc 25 at 152.  The effect of all three errors, he argues, deprived him of a viable defense of self-defense.  ECF Doc. 25 at 154.

### 1.    Cognizability

Whitman's Ground Ten claim is not cognizable on federal habeas review.  He seeks to cumulate his Ground One and Ground Nine claims to assert that, together, his constitutional rights were violated.  However, "the law of this Circuit is that "cumulative error" claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."  *Williams*, 460 F.3d at 816.  Moreover, the errors that Whitman wishes to accumulate concern the

retroactivity of a state statute and the propriety of the trial court's jury instructions.  As discussed above, the retroactivity of a state statute is a matter of state law and the state court reasonably determined that Whitman was not prejudiced by the lack of Castle Doctrine instructions.

### 2.  Procedural Default

Moreover, Whitman's Ground Ten claim is procedurally defaulted because he failed to present his cumulative-error claim at each stage in Ohio's review process.  *Id.*  Specifically, Whitman failed to raise it in his memorandum of support to the Ohio Supreme Court. *Thompson*, 598 F.3d 285; ECF Doc. 8-1 at 600-33.  Whitman cannot do so now.  *See Ohio Rev. Code § 2953.21(A)(1)(i)*; *Perry*, 10 Ohio St.2d at 176.  And he has not attempted to establish cause for his failure to raise his cumulative-error claim.  *Coleman*, 501 U.S. at 750.

### 3.  Ground Ten Summary

Because Whitman's Ground Ten claim asserts a non-cognizable claim of cumulative error, I recommend that Whitman's Ground Ten claim be DISMISSED on that basis.

## V.  Recommendation Regarding Certificate of Appealability

### A.  Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253 (c)(2)," Rule 11(a).  In light of the Rule 11

requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the COA issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

## B. Analysis

If the Court accepts my recommendations, Whitman will not be able to show that the Court's rulings on his claims are debatable among jurists of reason. Whitman's Ground One claim is procedurally defaulted and meritless. His Ground Two claim is non-cognizable in part, procedurally defaulted, and meritless. Whitman's Ground Three, Four, and Five claims are procedurally defaulted and meritless. Whitman's Ground Six, Seven, and Eight claims are procedurally defaulted in part and meritless. And Whitman's Ground Nine and Ten claims are non-cognizable.

Because jurists of reason would not find debatable that habeas relief is not available for any of the claims raised in Whitman's petition, I recommend that no certificate of appealability issue in this case.

**VI.    Recommendations**

Because all of Whitman's claims are non-cognizable, procedurally defaulted, and/or meritless, I recommend that all of Whitman's claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Whitman not be granted a certificate of appealability.

Dated: May 19, 2021

Thomas M. Parker
United States Magistrate Judge

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).